THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUBEN VARELA, Defendant-Appellant.

Third District   No. 3—89—0275

Opinion filed February 14, 1990.

358

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Tony L. Brasel, Special Prosecutor, of Watseka (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Ruben Varela, was convicted of two counts of aggravated battery and sentenced to concurrent terms of fours years' imprisonment. The court also imposed a $25 fine. The defendant appeals.

The record reveals that on August 10, 1988, at about 8 p.m., Michael Coleman, the chief of police for the Village of Onarga, Illinois, was leaving Durham Park in Onarga to proceed home to change into his uniform for the late-night shift. As Coleman got into his truck, he noticed the defendant's car rapidly passing him by and throwing gravel into the air. Coleman, believing the defendant to be

driving recklessly, stopped the defendant's car and asked to see the defendant's driver's license. Coleman, off duty at the time, was wearing shorts and a T-shirt, was without his badge or gun, and was driving his truck.

The defendant told Coleman he had no driver's license. Coleman then retrieved a whiskey bottle from the defendant's car and told the defendant he was under arrest. The defendant told Coleman he would not go with him and a scuffle ensued. The defendant's brother Joel, seeing his brother and Coleman struggling on the ground, grabbed Coleman from behind. During the struggle, the bottle broke. The imbroglio continued. Joel picked up the broken bottle and swung the bottle at Coleman. Joel plunged the jagged edge of the bottle into Coleman's chest and slashed Coleman's arms. Coleman, bleeding from his arm and chest, left the scene.

Coleman was taken by ambulance to a hospital and underwent surgery. The defendant and his brother were arrested the following morning in Durham Park after spending the evening in a nearby cornfield.

After waiving his *Miranda* rights, the defendant acknowledged the fight with Coleman and admitted that he and his brother Joel were drinking beer the night of the fight. The defendant also stated that he knew Coleman was a police officer prior to the scuffle. The defendant's brother Joel also made a statement. Joel stated that he was watching a basketball game in Durham Park when he heard a commotion in the parking lot and saw Coleman on top of the defendant. Joel stated that he subsequently kicked Coleman and hit him with a bottle in order to protect the defendant. At trial, Coleman stated the entire incident lasted two or three minutes.

At the close of the prosecution's case, the court granted the defendant's motion for a directed verdict on the attempted murder charge. Also, at the jury instructions conference, the court granted the defendant's motion for a directed verdict as to the armed violence charge. The jury found the defendant guilty of two counts of aggravated battery. Ill. Rev. Stat. 1987, ch. 38, pars. 12—4(a), (b)(6).

At the sentencing hearing, the defendant's attorney requested probation for the defendant. He noted that, other than a few traffic offenses, this was the defendant's first offense. The trial court, however, noted that this was an "alcohol case" and that the incident would not have happened except for the presence of alcohol, and that the defendant was the one who "put in motion these events which ultimately caused harm to Officer Coleman and which created his brother's problem." The court sentenced the defendant to concurrent terms

of four years' imprisonment and imposed a $25 fine.

The defendant on appeal raises two issues: (1) whether one of the defendant's two aggravated battery convictions should be vacated because both convictions were based on the same conduct; and (2) whether the trial court considered an improper factor in sentencing the defendant when he considered the defendant's responsibility for his brother's conduct.

The defendant first contends one of his aggravated battery convictions should be reversed because both convictions were based on a single act. The State counters, arguing that both convictions should be affirmed since each was caused by a separate physical act.

The defendant was convicted of aggravated battery on two separate grounds: battery against a police officer (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(6)), and battery causing great bodily harm (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(a)). The defendant contends these convictions stem from the single act of fighting with Coleman. The defendant admits in the reply brief that he failed to raise the issue at trial and that, therefore, the issue is waived. However, we choose to address this issue as plain error. 107 Ill. 2d R. 615(a).

As was first established in *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered."

Prior to the decision in *King*, Illinois courts followed what is referred to as the "independent motivation" test with respect to multiple convictions and concurrent sentences. The history of how Illinois courts addressed this issue before and after *King* was thoroughly articulated by this court in *People v. Ellis* (1986), 143 Ill. App. 3d 892, 493 N.E.2d 739.

■■ It is well settled that multiple convictions based upon the

same physical act or acts cannot stand. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Thus, we believe one of defendant's convictions must be vacated.

In *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180, the court held that separate blows, even though closely related, were not one physical act and could support separate convictions and concurrent sentences for both aggravated battery and mob action. *Dixon* seems to support the State's argument that defendant's dual aggravated battery convictions are sustainable in the instant case. We disagree. One factor which supports our conclusion is that the State made no attempt to differentiate between conduct supporting the first aggravated battery charge from that supporting the second charge.

■ Count III of the information charged the defendant with committing aggravated battery for causing great bodily harm to Officer Michael Coleman. Count IV charged the defendant with committing a battery to Officer Michael Coleman knowing Officer Michael Coleman to be a peace officer engaged in the execution of his official duties. More importantly, both counts of the information referred to the defendant's conduct, along with his brother's conduct, as "striking Officer Michael Coleman on or about his head or body with is [*sic*] fist, kicking at Officer Michael Coleman, and stabbing Officer Michael Coleman in the chest and both arms." Prosecutorial intent, as reflected in the language of the charging instrument, is a factor to be considered in determining whether a defendant's conduct constituted a single act or several separate acts. (*People v. Horne* (1984), 129 Ill. App. 3d 1066, 473 N.E.2d 584.) Along with prosecutorial intent, courts are to consider other factors when determining whether a defendant's conduct constituted a single act or several separate acts; among these are: (1) the time interval between successive parts of defendant's conduct; (2) the existence of an intervening act or event; and (3) whether the conduct occurred at the same location. (*People v. Horne* (1984), 129 Ill. App. 3d 1066, 473 N.E.2d 584.) Applying these factors to the instant case, we find the defendant's conduct constituted a single act.

In the case *sub judice*, like *Ellis*, "the method of charging the defendant is really nothing more than an insurance policy for the prosecution." What is obvious is that the prosecution wanted to convict the defendant of aggravated battery. The charging instrument gave the prosecution two shots at the target. If proof were made that the battery occurred with the defendant *knowing Officer Michael Coleman to be a peace officer engaged in the execution of his official duties*, then the battery became aggravated battery whether or not it

caused great bodily harm. On the other hand, if proof were made that the battery caused great bodily harm, then the battery became *aggravated battery* whether or not the defendant knew the officer to be a peace officer.

When the prosecution employs this type of strategy, there is a strong indication that the defendant can only be guilty of one offense. We cannot assume the jury would have determined the defendant knew Coleman to be a peace officer at the time of the incident. The record reveals that without the defendant's statement indicating that he knew Coleman to be a peace officer, the evidence would show a man wearing a T-shirt and shorts, without a police officer's badge, who ordered the defendant out of his car and told the defendant he was under arrest. A reasonable jury may have determined the defendant did not know Coleman to be a peace officer at the time of the incident. More importantly, the prosecutor did not know whether he could prove the defendant knew Coleman to be a peace officer at the time of this incident, and in order to "cover his tracks," charged the defendant with two counts of battery.

Moreover, we do not believe the defendant's conduct can be broken into separate acts. The foregoing factors favor finding a single physical act: according to Coleman, the entire incident lasted two to three minutes; there was no intervening event; the conduct took place in the parking lot; both counts referred to the same acts; and the language in the charging instruments was virtually identical. The plain and simple fact of this case is that the defendant and his brother beat up an off-duty police officer. The fact that this act occurred against a police officer does not belie the fact that a single offense of aggravated battery was committed. This case calls to mind Justice Goldenhersh's comment in *People v. Manning* (1978), 71 Ill. 2d 132, 135, 374 N.E.2d 200, 201-02, "If a person steals four horses from the barn of another, all being of different color, it would not be competent to charge the thief with four different larcenies \*\*\*."

■ *Under circumstances analogous to the instant case, one physical act was found when a defendant struck a victim three times with his fists, then kicked him twice.* (*People v. Hawk* (1980), 80 Ill. App. 3d 827, 400 N.E.2d 499.) One act was also found when a defendant struck a victim first on the back of her head and neck, then, after she turned around, hit her in the face and broke her nose. (*People v. Ellis* (1986), 143 Ill. App. 3d 892, 493 N.E.2d 739.) In both cases, the court determined that when a defendant's conduct does not give rise to separate acts, multiple convictions with concurrent sentences result in prejudice. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) As

we hold the instant defendant to have been so prejudiced, we vacate the defendant's conviction for battery based on committing a battery causing great bodily harm (count III) and affirm defendant's conviction for aggravated battery knowing Officer Michael Coleman to be a peace officer engaged in the execution of his official duties (count IV).

The defendant's next assignment of error is that his sentence should be vacated and this cause remanded for resentencing because the trial court considered an improper factor in imposing sentence. Although the defendant also waived this issue on appeal, we will address it as plain error. 107 Ill. 2d R. 615(a).

The trial court sentenced the defendant to two concurrent four-year terms of imprisonment for the two aggravated battery convictions. The imposed sentences equal twice the minimum sentence for a Class 3 felony.

The trial court agreed with the defendant that this was a case for probation, but noted at the sentencing hearing that it was defendant who "put in motion the series of events which eventually got his brother Joel in trouble." The record reveals the defendant, a 10-year resident of Onarga, has five traffic offenses in his background. The trial court aptly noted that the defendant had led a "substantially law abiding life."

We cannot determine from the record whether the defendant's two convictions for aggravated battery, one of which we hereby vacate, influenced the trial court's sentencing decision. Moreover, we find the trial court's consideration of the conduct of the defendant's brother improper.

In addition, we note the record contains a letter from a citizen of Onarga, a letter from the village board of Onarga, and a probation officer's report all replete with inflammatory comments. The gravamen of the letters and report is that the citizens of Onarga, as spoken presumably through the words of the village board, request that the defendant's sentence include a provision expelling defendant and his brother from Onarga, and that, according to the probation officer, defendant and his brother are of a different culture unassimilable with the majority of the citizens of Onarga.

The record indicates the trial court did address the defendant's concern with these letters and noted that he "wasn't in the expulsion business today." Under these inflamed circumstances, however, the trial court sentenced the defendant to twice the minimum sentence for a Class 3 felony offense. Moreover, we do not know whether the inflammatory letters and report contained within the presentencing report prejudicially impacted the trial court's decision.

■■ ■ A proper sentence must be based upon the particular circumstances of each case. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Along with the defendant's rehabilitative potential, the trial court must consider the nature of the crime, the protection of the public, deterrence, and punishment. (*People v. Darnell* (1981), 94 Ill. App. 3d 830, 419 N.E.2d 384.) Where, as here, the record shows the trial court considered improper evidence in imposing a sentence, the sentence must be vacated and the defendant must be granted a new sentencing hearing. (*People v. McCambry* (1979), 76 Ill. App. 3d 314, 395 N.E.2d 129.) Here, the defendant, as the trial court pointed out, is not likely to commit another crime and is not a danger to society. The sentences were imposed in an inflamed atmosphere after the trial court improperly considered the actions of defendant's brother. Accordingly, we vacate defendant's sentence and remand this proceeding for a rehearing to determine an appropriate sentence.

Accordingly, for the reasons given, the judgment with respect to count IV is affirmed, and the judgment and sentence with respect to count III are vacated. With respect to the sentence entered in count IV, we vacate the sentence imposed and remand the cause for resentencing.

Affirmed in part and reversed in part; cause remanded with instructions.

HEIPLE, P.J., and SCOTT, J., concur.