THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DARRYL JOE, Defendant-Appellant.

Fifth District   No. 5—88—0646

Opinion filed January 23, 1991.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial held in the circuit court of St. Clair County on September 14-16, and 19, 1988, defendant, Darryl Joe, was found guilty of the first-degree murder of Dr. Barrett Coleman. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3).) Defendant appeals this conviction and his sentence to a 60-year term of imprisonment. The following issues are presented for review: (1) whether defendant was proven guilty of the offense beyond a reasonable doubt; (2) whether he was denied a fair trial by prosecutorial remarks made during opening statements; (3) whether he was denied a fair trial by an error made in the timing of closing arguments; and (4) whether his sentence was based on the trial court's consideration of improper factors.

Defendant first contends that he was not proven guilty beyond a reasonable doubt because the circumstantial evidence offered by the State did not exclude every reasonable hypothesis of his innocence, citing *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 631. However, our supreme court has made it clear that the reasonable hypothesis of innocence standard of review is no longer viable in Illinois. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344, 346.) Instead, the reasonable doubt test as set forth in *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267,

should be applied in reviewing the sufficiency of evidence in all criminal cases, whether the evidence is direct or circumstantial. *Pintos*, 133 Ill. 2d at 291, 549 N.E.2d at 346.

The evidence in this case, when viewed in the light most favorable to the prosecution (see *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277), establishes the following facts. Defendant's brother, Demetrius Joe, testified that he, defendant, and another brother, Kevin Joe, agreed to help Curtis Kitchen rob someone that Kitchen knew. Kitchen drove defendant and his two brothers to defendant's sister's home in order to retrieve a gun. Lisa Joe and Donivan Lasley, defendant's sister and her boyfriend, testified that defendant and Kevin came to her house that evening and left with two guns, a shotgun and a pistol. Lisa then saw defendant and Kevin get into a car driven by Kitchen.

Demetrius testified that from Lisa's house Kitchen drove him and his brothers around the corner from where the victim was seated in a parked car. Defendant and Kevin got out of Kitchen's car and walked in the direction of the victim's car. Demetrius saw the lights on the victim's car come on and the vehicle drive away. Demetrius and Kitchen followed the victim's car to a nearby junk yard and parked a short distance away. Demetrius told Kitchen he was leaving and had just exited the car when he saw Kevin and defendant running back toward Kitchen's car.

Lea Reed and Jerry Butler were sitting in a parked car when Butler heard a gunshot and both saw two boys running along the street behind a car, which the boys entered. Reed and Butler heard a man calling for help and went to him. Reed testified that the man identified himself as Dr. Coleman and told her that two boys had robbed and shot him.

Charles Cary testified that he was walking near Butler's car when he heard a gunshot. Cary saw a car driving away, with defendant, Kevin and a third person running behind it. Defendant and Cary exchanged greetings as defendant jumped in the car and it sped away. A short time later, defendant and Kevin were seen at Cotina Valentine's house, where witnesses Cary, Allie Fischer and Paula McCray observed the two pacing the floor and acting nervous. Cary testified that defendant pulled out a gun and gave it to Kevin, who unloaded it. Cary identified People's exhibit No. 3 as the gun defendant was holding.

Although Allie Fischer denied her earlier statement to police that she had seen defendant with a gun, she testified to overhearing a conversation between Kevin and defendant, during which Kevin told defendant, " '[M]an, when you shoot somebody you don't [*sic*] supposed to

shoot to kill.' " According to Fischer, defendant replied, " '[M]an, when I shoot somebody, when I shoot I suppose [*sic*] to kill.' "

Firearms expert Thomas Gamboe identified People's exhibit No. 3 as the weapon that had fired the projectile recovered from Dr. Coleman's body. Forensic scientist Garold Warner identified a latent fingerprint recovered from the exterior of Dr. Coleman's car door as belonging to defendant, although Warner could not determine when the print had been made.

■ Defendant argues that because Demetrius did not see defendant or Kevin with the murder weapon when they left Kitchen's car, there can be no inference that defendant was at the scene with the murder weapon. However, the jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances which are relied upon to establish guilt, if all the evidence, taken together, convinces the jury beyond a reasonable doubt of the defendant's guilt. (*People v. Foster* (1979), 76 Ill. 2d 365, 374, 392 N.E.2d 6, 9.) Defendant was seen with a handgun before the shooting and with a gun identified as the murder weapon shortly after the shooting. This evidence, along with defendant's statement to Kevin following the shooting, was sufficient to allow a rational trier of fact to infer that defendant was at the scene with the murder weapon.

■ The remaining weaknesses in the State's case pointed to by defendant are similarly nonfatal to a jury's finding of guilt. Defendant argues that Demetrius' testimony is less than credible because he testified against his brother as part of a plea agreement in the case. Defendant correctly asserts that as an accomplice, Demetrius' testimony should be viewed with caution and suspicion. (See *People v. Newell* (1984), 103 Ill. 2d 465, 470, 469 N.E.2d 1375, 1377.) However, it is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Waln* (1988), 169 Ill. App. 3d 264, 273, 523 N.E.2d 1318, 1324.) Therefore, where accomplice testimony has satisfied the jury of a defendant's guilt beyond a reasonable doubt, a court of review should not disturb the jury's verdict unless it is plainly apparent that the necessary degree of proof is lacking. (*Waln*, 169 Ill. App. 3d at 272, 523 N.E.2d at 1324.) Here, where the jury was aware of Demetrius' motivation to testify and where that testimony was corroborated in several respects by other witnesses, we cannot say that it was unreasonable for the jury to have believed Demetrius' account.

We similarly find that it was not unreasonable for the jury to infer that defendant's fingerprint, found on the victim's car, was made the

night of the shooting. Although no method for dating a latent print exists, and evidence was presented concerning other opportunities for defendant to have made the print, these matters were explored on cross-examination and argued to the jury, and the jury found against the defendant. See *People v. Eyler* (1989), 133 Ill. 2d 173, 192, 549 N.E.2d 268, 276.

■ Finally, defendant contends that a note sent by the jury during deliberations, asking the court whether there was an option other than first-degree murder, should be interpreted as indicating that the jury was not convinced of defendant's guilt beyond a reasonable doubt. We agree with the State that this assertion is "an exercise in pure speculation." Regardless of the jurors' concern at the time the note was written, their ultimate verdict of guilt and their responses when polled confirm their belief in defendant's guilt, and we will not disturb that determination.

■ Defendant next contends that he was denied a fair trial by the State's reference in its opening statement to charges for which defendant was not on trial. Defendant was originally charged on March 9, 1988, with armed robbery, attempted murder, armed violence, aggravated battery and aggravated kidnapping. Following Dr. Coleman's death, defendant was charged, on May 6, 1988, with first-degree murder. On September 8, 1988, an amended information was filed charging defendant alternatively with first-degree murder with intent under section 9—1(a)(1) and first-degree murder while attempting or committing a forcible felony under section 9—1(a)(3) (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(3)). During the prosecutor's opening statement at trial, he remarked to the jury: "[F]our men were arrested for the shooting of Dr. Coleman. This defendant was one of them. They were originally charged with armed robbery, aggravated battery, a number of offenses. Those offenses were elevated upon Dr. Coleman's death, to the offense of first-degree murder."

Defendant claims that the prosecutor's reference to the original charges was prejudicial to defendant because the prosecutor's remark concerning the "elevated" charges did not let the jury know that defendant was not being tried on those charges or that they had been dismissed, thus allowing the jury to speculate that the charges were pending. However, since defense counsel neither objected to the remarks nor made any attempt to clarify the information given to the jury, and the issue was not raised in defendant's post-trial motion, it is therefore waived. See *People v. Volkmar* (1989), 183 Ill. App. 3d 149, 153, 538 N.E.2d 1255, 1257.

Even assuming, *arguendo*, that the issue had not been waived, the

case law cited by defendant does not support his contention of plain error. Defendant cites *People v. Timms* (1978), 59 Ill. App. 3d 129, 375 N.E.2d 1321, and *People v. Paull* (1988), 176 Ill. App. 3d 960, 531 N.E.2d 1008, where the trial courts were held to have committed reversible error when, in instructing panels of prospective jurors, each court referred to a charge for which the defendant was not on trial. However, in *Timms*, the defendant was prejudiced where the jury was not informed that the defendant had never been charged with the erroneously mentioned offense, attempted murder, and thus may have been left with the impression that this charge was also pending against the defendant. (*Timms*, 59 Ill. App. 3d at 137, 375 N.E.2d at 1327.) The defendant was similarly prejudiced in *Paull*, where the jury was not informed that the State had elected not to prosecute a count of the original indictment mistakenly read to them. (*Paull*, 176 Ill. App. 3d at 962-63, 531 N.E.2d at 1009-10.) Here, no such prejudice existed where the jurors were told that the original charges had been elevated to first-degree murder following Dr. Coleman's death.

Defendant also cites *People v. Mordican* (1976), 64 Ill. 2d 257, 356 N.E.2d 71, where the State, in its opening statement, referred to the defendant's arrest on an unrelated armed robbery offense and in its case in chief presented the testimony of one of the police officers who arrested the defendant on that charge, without informing the jury that the defendant had been acquitted of the charge. The supreme court held that the opening statement, coupled with the State's objection when the defendant attempted to inform the jury of his acquittal, was "plainly prejudicial" and warranted a new trial. *Mordican*, 64 Ill. 2d at 263-64, 356 N.E.2d at 71.

In *Mordican*, the prejudice to the defendant came from the mistaken impression given the jury that the defendant had committed other crimes. (See *People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 1016, 516 N.E.2d 382, 387 (generally, evidence of other crimes is inadmissible to show guilt of the offense charged).) Here, however, it was made clear at trial that all the charges referred to by the State in its opening statement were based on a single course of action which culminated in the shooting of Dr. Coleman. Furthermore, the jury was alternatively instructed on first-degree murder in the course of a forcible felony, namely, armed robbery. Therefore, where the jury was aware of the relationship between the other offenses mentioned by the State and the charge for which defendant was on trial, and this information did not prejudice defendant by showing his propensity to commit crime, any error resulting from the reference was harmless. See *Cobbins*, 162 Ill. App. 3d at 1016-17, 516 N.E.2d at 387-88.

■ Defendant next argues that he was unfairly limited in the amount of time allowed him for final argument. Defendant asserts that the court abused its discretion in denying his motion for mistrial, made after the jury retired for deliberations. Defendant's motion was based on a clerk's error in signaling defense counsel that his time for argument was up after 25 minutes, rather than the previously agreed-upon 45 minutes. In denying the motion, the court stated that it had previously told the attorneys to take as much time as needed, and that it was the attorneys who had made the agreement to limit argument to 45 minutes.

Defendant must demonstrate actual prejudice by the time limit imposed upon him (*People v. Trolia* (1982), 107 Ill. App. 3d 487, 502, 437 N.E.2d 804, 815, *cert. denied* (1983), 460 U.S. 1044, 94 L. Ed. 2d 180, 107 S. Ct. 1329), and here the court did not feel that defendant had suffered sufficient prejudice to grant a mistrial. Defense counsel did not request additional time, and the record reveals that he did address most of the relevant issues in the trial. Further, defendant's brief is devoid of any important points he wished to make but did not have the opportunity to do because of the time limitation. Thus, where defendant has not shown how he was prejudiced by the difference in argument time, the court's ruling was not an abuse of discretion. *Trolia*, 107 Ill. App. 3d at 502, 437 N.E.2d at 815.

■ Last, defendant contends that he is entitled to a new sentencing hearing or a reduction in his 60-year sentence given the court's reliance on improper aggravating factors. Absent an abuse of discretion, a reviewing court may not alter the trial court's sentencing determination. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) However, consideration of an improper factor in aggravation clearly affects the defendant's fundamental right to liberty, and a court of review must remand such a cause for resentencing, except in circumstances where the factor is an insignificant element of the defendant's sentence. *People v. Martin* (1988), 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886; *People v. Maxwell* (1988), 167 Ill. App. 3d 849, 851-52, 522 N.E.2d 288, 290.

Defendant maintains that the trial court erred in considering as aggravating factors, *inter alia*, the victim's death, his standing in the community, and the participation of defendant's younger brother Demetrius in the crime. At the sentencing hearing, the trial court's comments included the following:

> "The factors in aggravation that I will note are that you engaged in a course of conduct which threatened serious harm, indeed did cause serious harm to the victim. Further, that the

sentence that I am going to impose today is indeed necessary to deter other people from committing these types of offenses. And I think also there are certain things that I have to take into consideration that are not really set out in the factors in aggravation. Number one *** you have a responsibility yourself that you did not assume. You brought your brother into this, a younger brother. You had an opportunity to prevent him from being involved in this, but instead you incorporated him and he wound up getting a sentence.

\* \* \*

And I have to take into consideration the fact that [Dr. Coleman] was a doctor. Now, every human life is exactly the same, I think it's of equal value. But there are certain intangible things that we have to take into consideration. *** [Y]ou not only have deprived the community of another human life, but also a role model, someone that younger kids can look up to."

The court's consideration of serious harm as an aggravating factor in sentencing defendant for murder was improper, since serious harm is inherent in the offense. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138; *Martin*, 119 Ill. 2d 453, 519 N.E.2d 884.) The sentencing court may, of course, consider the force employed and the manner in which the victim's death is brought about. (*Saldivar*, 113 Ill. 2d at 271, 497 N.E.2d at 1144.) It appears from the record, however, that the court considered the end result of defendant's conduct, a result which is implicit in every murder. While consideration of an improper aggravating factor in sentencing does not always require remandment, resentencing is required where the reviewing court is unable to determine the weight given to the improper factor. (*People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340.) The uncertainty in this case is compounded by the other improper aggravating factors considered by the court.

While a trial court may properly consider nonstatutory aggravating factors in imposing sentence (*People v. Floyd* (1987), 160 Ill. App. 3d 80, 88, 512 N.E.2d 1378, 1384), the evidence considered must be both relevant and reliable. (*People v. Morgan* (1986), 112 Ill. 2d 111, 143, 492 N.E.2d 1303, 1317, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329.) Here, the court noted that defendant had "incorporated" his younger brother in the offense. However, there is no evidence that Demetrius agreed to participate at defendant's urging. Rather, it was Curtis Kitchen who planned the robbery and enlisted the help of all three Joe brothers. Thus, the evidence relied upon was irrelevant. Further, in *People v. Varela* (1990), 194 Ill.

App. 3d 357, 363, 551 N.E.2d 318, 322, the appellate court recently held, in a similar situation, that it was improper for the sentencing court to consider the defendant's responsibility for his brother's conduct. In *Varela*, the court had noted that it was defendant who "put in motion the series of events which eventually got his brother *** in trouble." 194 Ill. App. 3d at 363, 551 N.E.2d at 322.

The court herein committed further error by placing emphasis on the status of Dr. Coleman in the community. Personal traits of victims are not relevant to the question of guilt or innocence or to the question of the proper sentence to be imposed. (*People v. Walker* (1985), 109 Ill. 2d 484, 505, 488 N.E.2d 529, 538, *cert. denied* (1986), 479 U.S. 995, 93 L. Ed. 2d 598, 107 S. Ct. 598.) Here, consideration of the victim's profession and community standing was clearly inappropriate.

In view of the court's comments, we cannot say that its consideration of these aggravating factors was an insignificant element in defendant's sentence. It cannot be determined from the record that the weight placed on the improperly considered aggravating factors was so insignificant that it did not lead to a greater sentence. (*Maxwell*, 167 Ill. App. 3d at 853, 522 N.E.2d at 291.) We thus vacate the sentence of the circuit court and remand this cause for a new sentencing hearing to be conducted by a judge other than the one who presided over the first hearing. See *People v. Tompkins* (1987), 155 Ill. App. 3d 380, 382-83, 508 N.E.2d 481, 483-84.

For the aforementioned reasons, we affirm the judgment of the circuit court of St. Clair County convicting defendant of murder. With respect to the sentence imposed, we reverse and remand the cause for resentencing.

Affirmed in part and reversed in part; cause remanded with instructions.

RARICK, P.J., and HOWERTON, J., concur.