2023 IL App (2d) 220445-U
No. 2-22-0445
Order filed October 20, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-19 |
| JOSUA C. MATIAS, | ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court did not err in declining to instruct the jury on self-defense because, although defendant had been physically assaulted by fellow bar patrons, the ensuing melee had ceased, and no one near him posed any imminent danger, when he shot one of the assailants and another bar patron. (2) The trial court did not err in refusing to instruct the jury on reckless discharge of a firearm as a lesser included offense of aggravated discharge of a firearm, nor was trial counsel ineffective for failing to request an instruction on reckless conduct as a lesser included offense of aggravated battery with a firearm. Given how defendant aimed the gun, no rational jury could have found that he discharged the gun recklessly rather than knowingly fired in the direction of other people and wounded the victims.

¶ 2    Defendant, Josua C. Matias, appeals from a jury verdict finding him guilty of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2016)) and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2016)). He contends that (1) the trial court erred in refusing to instruct the jury on self-defense, (2) the trial court erred in refusing to instruct the jury on reckless discharge of a firearm as a lesser included offense of aggravated discharge of a firearm, and (3) his trial counsel was ineffective for failing to request a jury instruction on reckless conduct as a lesser included offense of aggravated battery with a firearm. Because none of defendant's claims has merit, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    After a jury trial, defendant was found guilty of two counts of aggravated battery with a firearm and one count of aggravated discharge of a firearm.

¶ 5    The following facts were established at the jury trial. In the early evening of January 6, 2019, defendant and a friend entered Rosati's restaurant in Montgomery. Defendant was armed with a semiautomatic handgun.

¶ 6    During the evening, defendant talked with several people, including Lorena Cortez,[1] with whom he socialized regularly. At around 10:30 p.m., defendant and Omar Dieppa, whom defendant had not met before, began to argue. The argument escalated into a brawl after Omar punched defendant in the face.

¶ 7    Two security videos, without audio, were entered into evidence via a stipulation and showed the relevant events from two different viewpoints within the restaurant's bar area. In the videos, defendant and Omar were arguing. Then several other people began to argue with defendant. Suddenly, Omar punched defendant in the face. Defendant began to punch back. Then

_____

[1]In his testimony, defendant referred to her as Lorena Ramirez, her prior name.

numerous people joined the fight, and a melee ensued. The fracas moved into a nearby booth, knocking down the booth table. Two people, defendant's friend and another man, tried to help defendant. Also joining the fight were four or five of Omar's friends and family.

¶ 8      As the fight continued in the booth, defendant fell out from under the pile of people and sat momentarily on the floor near the booth. As defendant sat on the floor, Omar, having fallen next to him, punched defendant in the head with his left fist. Immediately afterward, another man, Roberto Dieppa, stepped up behind defendant and struck him on the left side of his head with a beer bottle. Roberto was then pushed by another man several feet away from defendant and the booth.

¶ 9      At that point in the videos, defendant stood up and took several shaky steps backward toward the bar while reaching into his right front pocket. Armando Gonzalez, who stood at the bar facing defendant's back, gave defendant a slight push forward, away from the bar and back toward the booth. Defendant then began walking quickly forward with his right hand still in his pocket, taking approximately seven stumbling steps toward the side of the booth, onto the booth platform (now missing its table), then back onto the floor and away from his attackers. The melee at this point appears to have stopped, with no further punches being thrown. Blood was running down defendant's head from where he had been struck with the bottle.

¶ 10     Once he reached the far side of the booth from the bar, defendant pulled a handgun from the front of his pants with his right hand. In the same motion, defendant used his left hand to slide the top rail of the gun back, to chamber a cartridge. He then turned back to his right, facing the area of the fight. He raised the gun and fired four shots in quick succession while stepping backward away from the area of the fight and the other people in the bar area. According to the time stamp on the videos, defendant fired the first shot approximately five seconds after he stood

up. During those five seconds, none of defendant's attackers moved toward defendant or appeared to pursue defendant or his friends.

¶ 11    The first shot appeared to be aimed toward the ceiling, although at an angle parallel to the front of the booth and in the general direction of where defendant had been struck with the beer bottle. The second shot was also aimed upward, but the third was at a lower angle. Defendant held the gun high, and each shot caused the gun to recoil, sending defendant's right arm upward. After the second shot, defendant immediately lowered the gun toward the same area and stumbled backward while firing a third shot. Cortez was standing next to defendant but was focused on defendant's friend and appeared unaware of defendant's presence next to her until the first shot was fired. Defendant then lowered the gun again, now to chest level, aiming in the same direction but now slightly downward and directly toward where Omar was sitting on the floor. He fired a fourth shot, which struck Cortez in the arm from a distance of approximately two or three feet. Cortez was not moving toward defendant; neither defendant nor Cortez appeared to see each other at first. As these first four shots were fired, the people in the bar began to scatter and take cover, including Omar, who, after the fourth shot, limped toward the bar. According to the time stamp, the first four shots were fired within less than two seconds of each other.

¶ 12    Defendant then continued toward the front door of the restaurant, pushing through tables and chairs. The videos do not show anyone following or near defendant at that point, although Cortez had stumbled and fallen in a parallel direction to defendant's exit route from the restaurant, landing on the floor approximately 10 feet from defendant, a long table between them. Two people went to help Cortez on the floor, but neither of them moved beyond where she fell or in the direction of defendant. Having taken eight steps toward the front exit, and with no people between himself and the door, defendant again aimed his gun back toward people in the bar area, firing

three more shots in the direction of where Omar had now begun to hide. The time elapsed between the fourth and fifth shots was approximately six seconds; the fifth, sixth, and seventh shots were fired in immediate succession to one another. When defendant fired the fifth shot, a glass filled with beer on a nearby table shattered. The table was approximately three feet off the ground. After firing the seventh shot, Defendant then ran out the front door.

¶ 13    Officer Matthew Demetral of the Montgomery Police Department next testified that at about 10:25 p.m., he was dispatched to Rosati's to respond to a large fight in progress. When he arrived, he saw several people walking or running in different directions from the restaurant. When he entered, he saw that Cortez had a gunshot wound to her left forearm and Omar had a gunshot wound to his lower left leg.

¶ 14    Officer Anthony Hull of the Montgomery Police Department responded to the crime scene as an evidence technician. He found six spent shell casings in various locations in the dining/bar area. The casings were all marked "7.65 Browning." Hull also found a fired bullet under a chair and a bullet fragment in the booth area. After observing what appeared to be a bullet hole in the wall of the booth area, he recovered a fired bullet from inside the wall. He also observed what he believed was a bullet impact near the ceiling on a ceramic-covered wall behind the booths.

¶ 15    Detective Daniel Gonzalez of the Montgomery Police Department testified that another detective found a fired bullet in the ceiling of a bathroom. According to Gonzalez, Cortez reported that she was hit by the second shot that defendant fired as he ran toward the front door. Omar reported that he was shot while standing near the bar, but he did not know which shot hit him.

¶ 16    No victims or occurrence witnesses testified on behalf of the State.

¶ 17    Defendant testified for the defense. He admitted to carrying a loaded semiautomatic handgun into the restaurant. During the evening, he talked with Cortez, who showed up with some other people.

¶ 18    At around 10:30 p.m., defendant was talking with Cortez between the bar and a table. Henry Saucedo interrupted the conversation and began arguing with defendant about something. Cortez defused the situation, and she, defendant, and Saucedo separated. A few moments later, Saucedo reapproached along with Omar and both men began to argue with defendant. Omar then "sucker punche[d]" defendant in the face. Defendant immediately fought back by punching Omar.

¶ 19    A group of people then joined in the fight, knocking defendant into a booth. They started kicking and punching defendant. Defendant was not injured while in the booth but wanted to "get out of there." He managed to duck down and crawl out on the floor.

¶ 20    As he sat on the floor near the booth, someone behind him hit him on the side of the head with something hard. He did not know who or what hit him. According to defendant, he was in tremendous pain, and blood began squirting from his head wound. The blood ran into his left eye, blurring his vision.

¶ 21    Because defendant feared being hit again, he stood up, grabbed his gun, and fired several shots into the air to scare people away. He stumbled into tables and chairs as he ran toward the front door. According to defendant, because he heard someone say, "get him," and saw Saucedo and another man, Alfonso Dieppa, coming in his direction, he fired more shots as he moved toward the front door. He denied ever aiming the handgun at anyone or wanting to shoot Cortez or Omar. He could not recall how many times he fired the handgun. According to defendant, he fired the handgun in the air because he had been hit on the head, was outnumbered by his attackers, and feared what might happen next.

¶ 22    On cross-examination, defendant admitted that, although he brought the handgun into Rosati's for his own safety, no one had threatened him before he went there. He went there to "have some drinks" and watch the Bears game. The handgun's magazine was loaded, but he had to chamber a round before firing the first shot.

¶ 23    Although defendant could not recall what the argument with Omar was about, he affirmed that it was "just arguing" and he was not afraid during it. After Omar punched him, defendant and his two friends began punching Omar. When asked why he did not run straight for the front door after being hit on the head from behind, defendant answered that he was "trying to get away from [whoever] just hit [him] from behind." Defendant admitted that he saw no one fighting when he reached for his handgun. He also admitted that he did not see anyone chasing him after he initially stood up and ran. Nonetheless, he felt that everyone was threatening him when he chambered the first round. He initially fired three shots.

¶ 24    After firing the first three shots, defendant moved toward the front door. He admitted that he could see properly out of his right eye the entire time. According to defendant, he fired the second burst of shots because he saw two people coming toward him. However, he did not see them carrying a gun or any other weapons. No one else was near him when he fired the second burst of shots. Once in the front entry area of the restaurant, he fired one more shot because Saucedo was coming toward him. According to defendant, he fired the last shot up in the air.

¶ 25    After defendant left Rosati's, he disposed of the handgun. He sought no medical attention for his head wound. Instead, he drove to a friend's house where he passed out. The next day, he awoke with his head bandaged.

¶ 26    Defendant sought a self-defense instruction. The trial court refused to instruct the jury on self-defense, reasoning that the State's evidence "negate[d]" more than one of the elements necessary for the instruction.

¶ 27    As to the charge of aggravated discharge of a firearm, defendant sought lesser-included-offense instructions for reckless discharge of a firearm and reckless conduct. The trial court refused to give either instruction because it did not believe that the jury could find defendant not guilty of aggravated discharge of a firearm but guilty of either reckless discharge of a firearm or reckless conduct. Counsel did not seek a lesser-included-offense instruction on the aggravated battery charges.

¶ 28    The jury found defendant guilty of aggravated discharge of a firearm and both counts of aggravated battery with a firearm (Cortez and Omar). The trial court sentenced defendant to 10 years' imprisonment for aggravated battery with a firearm (Omar), 20 years' imprisonment for aggravated battery with a firearm (Cortez), and 10 years' imprisonment for aggravated discharge of a firearm. Defendant then filed this timely appeal.

¶ 29                              II. ANALYSIS

¶ 30    On appeal, defendant contends that (1) the trial court erred in refusing to instruct the jury on self-defense, (2) the trial court erred in refusing to instruct the jury on reckless discharge of a firearm as a lesser included offense of aggravated discharge of a firearm, and (3) his trial counsel was ineffective for failing to request a jury instruction on reckless conduct as a lesser included offense of aggravated battery with a firearm.

¶ 31    We first address defendant's contention regarding the self-defense instruction. Section 7-1(a) of the Criminal Code (Code) of 2012 (720 ILCS 5/7-1(a) (West 2016)) provides, in pertinent part, that a "person is justified in the use of force against another when and to the extent that he

reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." However, a person "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1(a) (West 2016).

¶ 32    To obtain a jury instruction on self-defense, the defendant must establish "some evidence" on each of six elements: (1) force is threatened against the defendant, (2) the defendant is not the aggressor, (3) the danger of harm is imminent, (4) the threatened force was unlawful, (5) the defendant actually and subjectively believed a danger existed that required the use of the force applied, and (6) the defendant's beliefs were objectively reasonable. *People v. Cacini*, 2015 IL App (1st) 130135, ¶ 44 (citing *People v. Jeffries*, 164 Ill. 2d 104, 128 (1995)). A defendant is entitled to a self-defense instruction "even if very slight or only some evidence exists to support the theory of self-defense." *Cacini*, 2015 IL App (1st) 130135, ¶ 45 (citing *People v. Lee*, 213 Ill. 2d 218, 224 (2004)). A self-defense instruction should not be given if the defendant fails to make the required evidentiary showing as to one or more of the factors. See *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 56. When the trial court, after reviewing all the evidence, determines that there is insufficient evidence to justify a particular instruction, the proper standard of review is abuse of discretion. *People v. McDonald*, 2016 IL 118882, ¶ 42. If "some," or even "slight," evidence exists to support a theory of self-defense, it is an abuse of discretion for the trial court to refuse to give the instruction. *People v. Jones*, 175 Ill. 2d 126, 132 (1997). The trial court's ruling on whether to give an instruction may be affirmed on any basis in the record. *People v. Mulvey*, 366 Ill. App. 3d 701, 711 (2006).

¶ 33    Here, defendant failed to establish some or even slight evidence on two of the six factors.[2]

First, the videos show that when defendant fired the handgun, there was no longer an imminent

threat of harm justifying the use of deadly force. As noted, section 7-1 of the Code allows deadly

force in self-defense only if the person using it reasonably believed it was necessary to prevent

imminent death or great bodily harm. 720 ILCS 5/7-1(a) (West 2016). The videos make clear that,

when he fired the first burst of shots, defendant had already separated himself from his attackers

and from anyone who might have had a weapon likely to cause death or great bodily harm.[3] Also,

defendant testified that he did not see anyone with a weapon when he fired any of the initial shots.

Further, when defendant fired the second burst of shots, no one with a visible weapon was

anywhere near him. Indeed, the videos show people scattering and seeking cover after the first

---

[2]When the trial court rejected the self-defense instruction by finding that the State had

"negate[d]" several of the factors, the court was *not* applying the test for whether defendant was

entitled to a self-defense instruction. Rather, the court was applying the test for whether, once a

self-defense instruction has been given, the jury properly rejected the self-defense theory. See

*People v. Jeffries*, 164 Ill. 2d 104, 128 (1995) ("If the State negates *any one* of the self-defense

elements, the defendant's claim of self-defense must fail." (Emphasis in original.)) However, as

discussed, we may affirm on any basis supported by the record.

[3]We recognize that hitting someone in the head with an unbroken glass beer bottle would

constitute the use of deadly force. See *People v. Varela*, 194 Ill. App. 3d 357, 368 (1990) ("Under

the circumstances presented, there is no question the [glass] bottle, intact or broken, constituted a

dangerous weapon under the armed violence statute."); see also *People v. Villalobos*, 53 Ill. App.

3d 234, 240 (1977); *People v. Fort*, 119 Ill. App. 2d 350, 354 (1970).

burst of shots. Although defendant testified that he fired the second burst of shots because he heard someone say, "get him" and saw two people coming toward him the videos do not show anyone approaching him when he fired the second burst. Additionally, when he fired the final shots before exiting the restaurant, there was no one anywhere near him, much less anyone with a weapon. Based on the clear video evidence, there was simply no indication, even slight, that defendant was subject to the threat of imminent harm when he fired any of the shots. That alone was a proper basis to deny giving a self-defense instruction.

¶ 34 Second, there was no evidence, even slight, that any subjective belief by defendant that the use of deadly force was necessary was objectively reasonable. As discussed, no reasonable person in defendant's position could believe that it was necessary to fire seven (or any) shots to prevent the imminent use of force after (1) defendant moved several steps away from Roberto (the assailant with the bottle, who had already been pushed in the opposite direction), (2) the brawl stopped, and (3) no one with any sort of weapon was anywhere near defendant. Nor would a reasonable person believe that, after further separating himself from his assailants and everyone else by running toward the front door, it was necessary to fire a second burst of shots in the direction of the people in the restaurant. Thus, there was no evidence, even slight, that defendant's subjective belief that deadly force was necessary to protect himself from further harm was objectively reasonable. Thus, we hold that the trial court did not err in refusing the self-defense instruction.

¶ 35 We next address whether the trial court erred in refusing to instruct the jury on the uncharged offense of reckless discharge of a firearm as a lesser included offense of aggravated discharge of a firearm.

¶ 36 A lesser included offense is one that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the

commission of the offense charged[.]" 720 ILCS 5/2-9(a) (West 2016). Our supreme court has established a two-part approach for determining whether a defendant is entitled to a jury instruction on a lesser included offense. *People v. Ceja*, 204 Ill. 2d 332, 360 (2003). First, the court must determine whether the charging instrument described the lesser offense. *Ceja*, 204 Ill. 2d at 360. At a minimum, the charging instrument must contain "a broad foundation or main outline of the lesser offense." *Ceja*, 204 Ill. 2d at 360. Second, if the charging instrument identifies a lesser included offense, the evidence at trial must rationally support a conviction on the lesser included offense. *Ceja*, 204 Ill. 2d at 360. To that end, a court must examine the evidence presented and determine whether the evidence would permit a jury to rationally find the defendant guilty of the lesser included offense but acquit the defendant of the greater offense. *Ceja*, 204 Ill. 2d at 360.

¶ 37    A trial court's determination of whether the uncharged offense is a lesser included offense of the charged crime is a question of law subject to *de novo* review. *People v. Kolton*, 219 Ill. 2d 353, 361 (2006). However, a trial court's decision not to give a lesser included instruction because the evidence does not rationally support a conviction for the lesser included offense is reviewed for an abuse of discretion. See *People v. Jones*, 219 Ill. 2d 1, 31 (2006).

¶ 38    Here, we first determine that the charge of aggravated discharge of a firearm broadly defined the offense of reckless discharge of a firearm.

¶ 39    Reckless discharge of a firearm requires proof that the defendant (1) recklessly discharged a firearm and, in doing so, (2) endangered the bodily safety of an individual. 720 ILCS 5/24-1.5(a) (West 2016).

> "A person *** acts recklessly when that person consciously disregards a substantial
> and unjustifiable risk that circumstances exist or that a result will follow, described by the
> statute defining the offense, and that disregard constitutes a gross deviation from the

standard of care that a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2016).

"The discharge of a firearm is reckless when the act creates a substantial and unjustifiable risk to others." *People v. Giraud*, 2012 IL 113116, ¶ 21.

¶ 40    The indictment here charged defendant with knowingly or intentionally discharging a firearm in the direction of another person. Clearly, discharging a firearm in the direction of another person would necessarily endanger, at the very least, the bodily safety of that person. Further, recklessness is a less culpable mental state than knowledge. See *People v. Fornear*, 176 Ill. 2d 523, 531 (1997); see also *People v. Williams*, 293 Ill. App. 3d 276, 281 (1997). Therefore, the charge of aggravated discharge of a firearm here broadly defined the offense of reckless discharge of a firearm. Thus, it satisfied the first part of the two-part test for giving a lesser-included-offense instruction.

¶ 41    However, we must further determine whether the evidence would have permitted the jury rationally to find defendant guilty of the lesser offense of reckless discharge of a firearm while finding him not guilty of the greater offense of aggravated discharge of a firearm.

¶ 42    Although defendant testified that he never fired the gun at anyone but, rather, shot it only in the air, that testimony was belied by the video evidence. The videos show defendant firing the gun multiple times in the direction of several people, striking two of them. Defendant repeatedly lowered the gun in the direction of Omar and others near him. Moreover, the videos show that the last shots he fired were from chest level aimed downward toward people in the bar; one shot broke a beer glass on a table approximately three feet high. Further, one of the shots struck Cortez in the forearm and one hit Omar in the lower leg. These were not fired "into the air." The video evidence and the fact that two individuals were shot directly conflicts with defendant's testimony that he

did not intentionally shoot the handgun at anyone. Considering the overwhelming evidence that defendant knowingly or intentionally discharged the firearm in the direction of people in the bar, a jury could not have rationally found that he had been merely reckless in doing so. Thus, the trial court did not abuse its discretion in refusing to give an instruction on reckless discharge of a firearm as a lesser included offense of aggravated discharge of a firearm.

¶ 43   We next address defendant's remaining assertion that his trial counsel was ineffective for failing to request an instruction on reckless conduct as a lesser included offense of aggravated battery with a firearm.

¶ 44   To establish a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must satisfy both prongs, and failing to satisfy either prong precludes a finding of ineffective assistance. *People v. Milton*, 354 Ill. App. 3d 283, 289 (2004).

¶ 45   As discussed above, the existence of a lesser included offense does not necessarily create an automatic right to an instruction on that offense. *People v. Greer*, 336 Ill. App. 3d 965, 978 (2003). Rather, a defendant is entitled to have the jury instructed on a lesser included offense only if the evidence presented would permit a jury to rationally find him guilty of the lesser included offense but find him not guilty of the greater offense. *Ceja*, 204 Ill. 2d at 360.

¶ 46   Turning to whether reckless conduct was a lesser included offense of aggravated battery with a firearm as charged, the indictment charged defendant with aggravated battery with a firearm in that he "knowingly discharged a firearm and caused injury to [Cortez and Omar]." The offense of reckless conduct occurs when a person recklessly performs an act that causes bodily harm to or endangers the safety of another person. 720 ILCS 5/12-5(a)(1) (West 2016). The only difference

here between the charged offense and reckless conduct is the mental state. *People v. Lane*, 2017 IL App (1st) 151988, ¶ 15. An allegation of recklessness can be inferred from the more culpable mental state of knowledge. *Lane*, 2017 IL App (1st) 151988, ¶ 15). Because the only difference between reckless conduct and aggravated battery with a firearm as charged here was the mental states, reckless conduct was a lesser included offense of aggravated battery with a firearm.

¶ 47    However, although reckless conduct was a lesser included offense of aggravated battery with a firearm, an instruction should be given only where a jury could rationally find defendant guilty of reckless conduct but find him not guilty of aggravated battery with a firearm. See *Ceja*, 204 Ill. 2d at 360.

¶ 48    As with defendant's argument as to the lesser included offense of reckless discharge of a firearm, the evidence here did not permit an instruction on reckless conduct. Considering the clear video evidence that defendant knowingly fired numerous shots in the direction of individuals and struck two of them, no jury could have rationally found him guilty of reckless conduct and not guilty of aggravated battery with a firearm. Thus, trial counsel was not deficient in failing to request an instruction on the lesser included offense of reckless conduct.

¶ 49    Nor was defendant prejudiced by counsel's failure to request a lesser included offense instruction on reckless conduct. As discussed above, there was no factual basis for instructing the jury on recklessness. Therefore, there was not a reasonable probability that the trial outcome would have been different, even had that instruction been given. See *Strickland*, 466 U.S. at 694. The video evidence overwhelmingly showed defendant firing his handgun several times in the direction of individuals in the restaurant, including multiple shots at his primary assailant. In doing so, he clearly knew that one or more of the bullets would likely strike one or more of those individuals. Had the jury been given the option of finding that he acted merely recklessly as opposed to

knowingly, there was not a reasonable probability that it would have found, based on all of the evidence, that he acted recklessly as opposed to knowingly. Thus, defendant has also failed to establish the prejudice prong of his ineffective assistance of counsel claim.

¶ 50    For the foregoing reasons, the trial court did not err in refusing to give a self-defense instruction or in refusing to give an instruction on reckless discharge of a firearm as a lesser included offense of aggravated discharge of a firearm. Nor was trial counsel ineffective for failing to seek an instruction on reckless conduct as a lesser included offense of aggravated battery with a firearm.

¶ 51                                       III. CONCLUSION

¶ 52    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 53    Affirmed.