THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEXANDER McPHEE, Defendant-Appellant.

First District (1st Division)    No. 1—91—2908

Opinion filed November 29, 1993.

Michael J. Pelletier and Nan Ellen Foley, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustmann, and Katherine S.W. Schweit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Alexander Mcphee was found guilty of possession with the intent to deliver more than 15 and less than 100 grams of a controlled substance containing cocaine. The trial judge sentenced defendant to nine years in the Illinois State Penitentiary. On appeal, defendant argues: (1) that his sixth amendment right to effective assistance of counsel was denied by his attorney's failure to move to quash his arrest on the grounds that the police made a forcible entry and search of his wife's home while acting pursuant to a warrant which only authorized a search of a Federal Express envelope; (2) that his motion to suppress evidence should have been granted where the police officer did not have any articulable reason to suspect that the Federal Express package addressed to defendant contained contraband before seizing it for a "dog sniff"; (3) that he must be resentenced where the trial court considered in aggravation that defendant's daughter Mary, a witness to the police arrest and search of the McPhee home, testified on defendant's behalf; and (4) that he was denied a fair trial by the prosecutor's remarks in closing argument urging the jury to convict

defendant in order to combat the "number one disease" of drug abuse and that "every single member of your community is a potential victim."

On September 30, 1988, Detective Michael Farrant and his narcotics detection dog were assigned to the Federal Express facility at Los Angeles International Airport. According to Farrant, when his narcotics detection dog "sniffed" an envelope addressed to the defendant, the dog "alerted" to the presence of narcotics. Farrant allowed the envelope to be loaded onto a plane bound for Illinois and then he called the Chicago police department. He informed Detective Richard Boyle that a suspect package addressed to A. McPhee at 253 East 142nd Street would be arriving through Federal Express. Based upon the information provided by Farrant, Boyle prepared a complaint for a search warrant and, on October 2, 1988, Judge Bertina Lampkin signed the search warrant. The search warrant commanded that the officers search "A Federal Express Overnight Letter, measuring approximately $8^1/2$" X 11", addressed to A. McPhee, Southside Paralegal 253 East 142nd St. Dolton, Illinois." Boyle then gave the warrant to other officers to execute.

Officer Chris Coleman executed the search warrant on October 3, 1988. She opened the envelope and field tested the substance within it. The test results were positive for cocaine. Coleman then repackaged the cocaine in the Federal Express envelope and handed it to Special Agent Raymond Spoon of the Federal Bureau of Investigation.

The police then set up surveillance of the designated address. Spoon put on a Federal Express uniform and, driving a Federal Express van, he delivered the package to the address on the envelope. A young girl answered the door and offered to accept the package. Spoon said he needed to speak to her father. The girl disappeared and returned with Sharon McPhee, the defendant's wife. Sharon told Spoon that her husband was not home. Spoon, therefore, gave the package to her and left.

Five minutes later, Coleman, Detective George Mays and another officer went to the front of the house. When they knocked on the door, they saw defendant's wife and daughter look through the front windows. Someone then opened the door a crack and the officers identified themselves. According to the testimony of both Coleman and Mays, Mays then put his foot in the door and the officers made a forcible entry into the home. Mays remained in the living room with defendant's wife and daughter while Coleman went to the back of the house. Coleman found defendant in a back office. According to Coleman, she saw in "plain view" just a few feet away from defendant a bag of white powder and a postal scale. Coleman stated that defen-

dant then admitted that they were his drugs. He was arrested and read his *Miranda* rights. Mays then asked defendant if he had any more drugs in the house and defendant said he had some in the bedroom. Defendant and Mays then went upstairs where Mays recovered the empty Federal Express envelope, a bag of marijuana, two vials of cocaine, and a telephone bill in Sharon McPhee's name.

At trial, the defense presented the testimony of defendant, his wife and his daughter. The jury returned a verdict of guilty of possession with the intent to deliver more than 15 and less than 100 grams of a controlled substance containing cocaine. At the sentencing hearing, the judge considered the fact that defendant allowed his minor daughter to testify falsely as an aggravating factor and sentenced defendant to nine years in the penitentiary.

Prior to trial, defendant filed a motion to suppress on the grounds that the Los Angeles police officer did not have probable cause or reasonable suspicion to seize the Federal Express envelope. He also challenged the warrant on the grounds that it only stated that the officers had probable cause to believe that the envelope contained cocaine. Since the drug detection dog could not differentiate between cocaine, marijuana, and heroin, defense counsel argued that the police must have opened the package prior to receiving the warrant. Defendant's pretrial motions were denied.

Defendant's first contention on appeal is that he was denied his right to the effective assistance of counsel because defense counsel failed to make a pretrial motion to quash his arrest and suppress evidence on the grounds that the police forcibly entered and searched his wife's home without a proper warrant. Specifically, he asserts that the warrant the police possessed at the time of his arrest and the search of the house only authorized a search of the Federal Express envelope. He contends that since the police, in effect, made a warrantless entry and search, the court would have granted his motion to quash his arrest and suppress the evidence discovered in the search and, therefore, there is a strong probability that the result of the trial would have been different.

The State argues, on the other hand, that defense counsel's failure to make such a motion was a "tactical decision" and a matter of professional judgment. The State points out that defense counsel made several other motions to suppress, called witnesses and cross-examined witnesses, pursued a defense throughout trial and objected numerous times. The State asserts that, rather than viewing specific acts or omissions of counsel, counsel's "total performance" must be evaluated in order to determine whether there has been a breakdown in the adversarial process. The State also argues that it is "absurd"

for defendant to suggest that the warrant was only for the Federal Express envelope and not for the home. Finally, the State maintains that "exigent circumstances" existed which would have justified a warrantless entry.

Ineffective assistance of counsel is established if defendant demonstrates that his counsel's performance fell below an objective standard of reasonableness and that, but for this substandard performance, there is a reasonable probability that the outcome of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68; *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255; *People v. Martin* (1992), 236 Ill. App. 3d 112, 120, 603 N.E.2d 603, 608.) In order to show a "reasonable probability" that the trial result would have been affected, defendant must demonstrate more than just that his counsel's errors " 'had some conceivable effect on the outcome of the proceeding.' " (*People v. Patten* (1992), 240 Ill. App. 3d 407, 413, 608 N.E.2d 351, 355, quoting *Strickland*, 466 U.S. at 693, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067.) Defendant must show that counsel's deficient performance was " 'sufficient to undermine confidence in the outcome.' " (*Patten*, 240 Ill. App. 3d at 413, 608 N.E.2d at 355, quoting *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) Therefore, a defendant is only entitled to competent, and not perfect, representation. *People v. Purnell* (1984), 126 Ill. App. 3d 608, 623, 467 N.E.2d 1160, 1171.

Additionally, in order to avoid the "distorting effects of hindsight," reviewing courts indulge in a "strong presumption" that defense counsel's performance " '[fell] within the wide range of reasonable professional assistance.' " (*Patten*, 240 Ill. App. 3d at 413, 608 N.E.2d at 355, quoting *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. 2065.) The United States Supreme Court stated in *Strickland*:

> " 'It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *** There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. [Citation.]' " (*Patten*, 240 Ill. App. 3d at 414, 608 N.E.2d at 356, quoting *Strickland*, 466 U.S. at 689-90, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065-66.)

Following this reasoning, Illinois courts generally have concluded that "a trial counsel's decision to file or not to file a pretrial motion

is a matter of professional judgment beyond the scope of appellate review." (*Martin*, 236 Ill. App. 3d at 121, 603 N.E.2d at 609; see *People v. Mendez* (1991), 221 Ill. App. 3d 868, 873, 582 N.E.2d 1265, 1269; *People v. Purnell* (1984), 126 Ill. App. 3d 608, 624, 467 N.E.2d 1160, 1171; *People v. Brittain* (1976), 35 Ill. App. 3d 1047, 1054, 342 N.E.2d 814, 819.) However, in several cases, Illinois reviewing courts have found ineffective assistance of counsel when the pretrial motion which counsel neglected to present was defendant's strongest defense or "patently meritorious."

In *People v. Stewart* (1991), 217 Ill. App. 3d 373, 577 N.E.2d 175, two police officers observed two men conversing on the sidewalk. They observed one man hand an unidentified object to the other man. When the officers approached, the men ran. After apprehending the two men, the officers discovered cocaine in defendant's possession. The *Stewart* court reasoned that the question of probable cause was "a close one" and the failure to file a motion to suppress could not have been "trial strategy" where defendant's only viable defense lay in contesting the propriety of the arrest. (*Stewart*, 217 Ill. App. 3d at 376, 577 N.E.2d at 176.) In *People v. Downey* (1990), 198 Ill. App. 3d 704, 556 N.E.2d 300, the police entered a house without permission for the purpose of taking defendant to the police station for questioning. The officers found defendant hiding in a closet under some clothes and one of the officers had his gun out of his holster when he told defendant to exit the closet. Defendant was placed in an interrogation room and, subsequently, he confessed. The *Downey* court reasoned that defendant was arrested by the police, that at the time of his seizure the police clearly lacked probable cause to arrest defendant, and that there was a "reasonable probability" that his confession would have been suppressed if defense counsel had filed a pretrial motion. Moreover, the court stated that defendant's argument was "patently meritorious." *Downey*, 198 Ill. App. 3d at 716, 556 N.E.2d at 307.

■ In this case, although it would be convenient simply to say that the failure to file a pretrial motion to quash defendant's arrest was "a matter of professional judgment beyond the scope of appellate review," we believe that, under the facts of this case, it rose to the level of ineffective assistance of counsel. The fourth amendment to the United States Constitution provides that

> "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., amend IV.)

In *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, the Supreme Court held that the fourth amendment, made applicable to the States by the fourteenth amendment, prohibits the police from making a warrantless, nonconsensual entry into a suspect's home for the purpose of making a routine felony arrest or search absent exigent circumstances. (See *People v. Galdine* (1991), 212 Ill. App. 3d 472, 479, 571 N.E.2d 182, 187; *People v. Spicer* (1987), 163 Ill. App. 3d 81, 87, 516 N.E.2d 491, 496.) The *Payton* Court reasoned that the " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " (*Payton*, 445 U.S. at 585, 63 L. Ed. 2d at 650, 100 S. Ct. at 1379, quoting *United States v. United States District Court for the Eastern District* (1972), 407 U.S. 297, 313, 32 L. Ed. 2d 752, 764, 92 S. Ct. 2125, 2134.) Citing to *Boyd v. United States* (1886), 116 U.S. 616, 625, 29 L. Ed. 746, 749, 6 S. Ct. 524, 529, the *Payton* Court noted that the fourth amendment arose as a response to the "hated writs of assistance" which allowed British colonial authorities "to search where they pleased for goods imported in violation of British tax laws." The *Payton* Court recounted John Adams' belief that when James Otis denounced the writs as the "worst instrument of arbitrary power" because they placed the liberty of every man in the hands of every "petty officer," "[t]hen and there the child Independence was born." *Payton*, 445 U.S. at 583 n. 21, 63 L. Ed. 2d at 649 n. 21, 100 S. Ct. at 1378 n. 21.

"[A]t the very core [of the fourth amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (*Payton*, 445 U.S. at 589-90, 63 L. Ed. 2d at 653, 100 S. Ct. at 1382.) Therefore, the *Payton* Court recognized "the long-settled premise that, absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional *even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within.*" (Emphasis added.) (*Payton*, 445 U.S. at 587-88, 63 L. Ed. 2d at 651-52, 100 S. Ct. at 1381.) If an officer merely needed probable cause in order to search a suspect's home, " 'the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified.' " *People v. Kelley* (1982), 104 Ill. App. 3d 51, 53-54, 432 N.E.2d 630, 632, quoting *Jones v. United States* (1958), 357 U.S. 493, 497-98, 2 L. Ed. 2d 1514, 1518-19, 78 S. Ct. 1253, 1256-57.

Moreover, it is well established under both the United States Constitution and the Illinois State Constitution that, in order to be valid, a warrant must state with *particularity* the place to be searched and the persons or things to be seized. (*People v. Bak* (1970), 45 Ill. 2d

140, 144, 258 N.E.2d 341, 343; *People v. Kimmel* (1966), 34 Ill. 2d 578, 580-81, 217 N.E.2d 785, 787; *People v. Simmons* (1991), 210 Ill. App. 3d 692, 696, 569 N.E.2d 591, 594; U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6.) The Illinois Code of Criminal Procedure of 1963 also requires that a warrant

> "command the person directed to execute the same to search the place or person *particularly* described in the warrant and to seize the instruments, articles or things *particularly* described in the warrant." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, par. 108—7 (now 725 ILCS 5/108—7 (West 1992)).

In this case, the search warrant the officers possessed when they forcibly entered defendant's home commanded that the officers search "A Federal Express Overnight Letter, measuring approximately $8^1/2$" X 11", addressed to A. McPhee, Southside Para-legal 253 East 142nd St. Dolton, IL." In addition, it commanded that they seize:

> "Cocaine, a schedule II Controlled Dangerous Substance. Books, records, receipts, notes, ledgers, and other documents relating to transporting, ordering, purchasing and distributing controlled substances. Also Indicia of occupancy, residency and related narcotic paraphernalia."

The State argues that it is absurd to suggest that this search warrant was limited in its scope to only the Federal Express envelope. The State points to the language describing the things to be seized and asserts that the warrant clearly sought more than the drugs in the envelope. The State then asks: "[W]hy would the police officers have allowed the envelope to be accepted inside the house if they did not have a search warrant for the house?"

Suffice it to say, on its face, the warrant the police possessed did not command that the house at 253 East 142nd Street in Dolton, Illinois, be searched. The warrant only commanded that a Federal Express package be searched. Even assuming we accept the State's assertions that the warrant clearly illustrates that the officers contemplated searching the house, this warrant does not satisfy the requirement of both the State and Federal constitutions that a warrant must particularly describe the place to be searched.

The State also contends that, even if the warrant did not include the home within its purview, the search was justified by exigent circumstances and cites *People v. Eichelberger* (1982), 91 Ill. 2d 359, 438 N.E.2d 140, for this proposition. *Eichelberger*, however, is distinguishable. In *Eichelberger*, the arresting officer could hear through the open door of defendant's hotel room what he reasonably believed to be a drug transaction taking place within the room. The *Eichelberger* court held that "[t]he fact that the officers reasonably believed that a

felony was being committed in their presence demanded prompt police action and constituted an exigent circumstance which justified the warrantless entry into the hotel room and the arrest." (91 Ill. 2d at 369.) In this case, no such prompt police action was mandated. The police already had a warrant for the Federal Express envelope and could have easily included the residence in this warrant. Anticipatory warrants are constitutional. (*Galdine*, 212 Ill. App. 3d at 480, 571 N.E.2d at 188.) Although defendant was suspected of a drug offense, he is "no less entitled to [fourth amendment] protection than those suspected of nondrug offenses." *United States v. Karo* (1984), 468 U.S. 705, 717, 82 L. Ed. 2d 530, 543, 104 S. Ct. 3296, 3304.

The State also argues that the entry was constitutional under the "good faith" exception to the warrant requirement announced in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405. The *Leon* Court noted that the exclusionary rule was a judicially created remedy designed to deter police misconduct and thus safeguard fourth amendment rights. Therefore, the *Leon* Court reasoned that no purpose is served by excluding evidence which is unconstitutionally seized by an officer who acted with reasonable good faith in reliance upon a defective warrant which was issued by a "neutral and detached magistrate." Consequently, the *Leon* Court held that when officers act in objective good faith and "within the scope" of a facially valid warrant which is subsequently determined to be defective (*i.e.*, not supported by probable cause), the evidence seized should not be excluded. The police actions here do not fall within the *Leon* "good faith" exception, however, because the warrant at issue was not legally defective. The police had a valid warrant; they simply acted outside of its scope.

Therefore, if defense counsel had filed a pretrial motion to quash defendant's arrest and suppress the evidence seized as a result of the unconstitutional entry, the outcome would have been different. The court would have had to exclude all the evidence which was seized as a result of the unconstitutional entry. Consequently, the State would have had to forego defendant's prosecution because it would have had no evidence.

We conclude that failure to file this pretrial motion was ineffective assistance of counsel. This argument was "patently meritorious" and the strongest argument defendant could have presented. Moreover, "[f]reedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment" (*Payton*, 445 U.S. at 587, 63 L. Ed. 2d at 651, 100 S. Ct. at 1380) and defense counsel should be particularly sensitive to challenging this type of violation. Otherwise, the

principal protection provided by the fourth amendment will have been nullified and, in the defendant's case, would have become nothing more than an "empty phrase." *Jones*, 357 U.S. at 498, 2 L. Ed. 2d at 1519, 78 S. Ct. at 1257.

■ We also agree with defendant's second contention that the Federal Express envelope was unconstitutionally seized from the Federal Express facility at the Los Angeles airport without the requisite reasonable suspicion that it contained narcotics.

Los Angeles police detective Michael Farrant testified that, on September 30, 1988, he and his narcotics detection dog were assigned to the Federal Express facility at Los Angeles International Airport. Farrant testified that he "went through" approximately 100 packages before coming to the envelope addressed to defendant. He explained that he was looking for packages which were not delivered by truck or courier, were paid for in cash with handwritten airbills and were going from one individual to another. He admitted that other than these characteristics of the envelope there was nothing unusual about it. He stated that he then "took possession of [the envelope]" and locked it in the cab of his police car while he set up a controlled environment for a "dog sniff." He said that first he found a cart with boxes on it and had his police detection dog check the cart. The dog did not alert to any of the boxes on the cart. He then retrieved the package from his police car and placed it on the cart with the other boxes. According to his testimony, the envelope had been in the car approximately 20 minutes. When the dog sniffed the cart with the envelope on it, the dog became agitated and began to scratch the envelope. He stated that he stayed with the package until a Federal Express employee put it in a bag and placed it on a plane bound for Illinois. He then called the Chicago police and asked them to accept the package and continue the investigation.

The fourth amendment protects the "right of the people to be secure in their persons, houses, papers, and *effects,* against unreasonable searches and seizures." (Emphasis added.) (U.S. Const., amend. IV.) The Federal Express envelope "was unquestionably an 'effect' within the meaning of the Fourth Amendment." (*United States v. Jacobsen* (1984), 466 U.S. 109, 114, 80 L. Ed. 2d 85, 94, 104 S. Ct. 1652, 1657 ("Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy").) Subjecting packages located in a public place to a "canine sniff," however, does not constitute a "search" under the fourth amendment. (*United States v. Place* (1983), 462 U.S. 696, 707, 77 L. Ed. 2d 110, 121, 103 S. Ct. 2637, 2645.) Additionally, a package is "seized" by governmental authorities when they "exert dominion

and control over the package for their own purposes." (*Jacobsen*, 466 U.S. at 120 n.18, 80 L. Ed. 2d at 99 n.18, 104 S. Ct. at 1660 n.18.) Therefore, although the Federal Express envelope clearly falls under the ambit of fourth amendment protections, subjecting it to a "dog sniff" was not an unconstitutional search. When Farrant "took possession of it" and placed it in his locked police car, however, he had clearly seized the envelope and thus implicated the fourth amendment. Consequently, the issue is whether this seizure was unconstitutional.

Defendant asserts that the characteristics of the envelope which Farrant stated caused him to seize it were not sufficient to give him "reasonable suspicion" that the envelope contained narcotics. Defendant points out that the trial judge agreed with him that Farrant did not possess reasonable suspicion. The trial judge denied his motion, however, because he believed that under principles of bailment law Federal Express had a right to transfer possession of the envelope to the police. The trial judge was incorrect as to the applicable law and we agree with defendant that his motion to suppress should have been granted.

The general rule is that the seizure of personal property is *per se* unreasonable "unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." (*Place*, 462 U.S. at 701, 77 L. Ed. 2d at 116-17, 103 S. Ct. at 2641.) In *Place*, however, the United States Supreme Court held that important law enforcement interests could support a seizure of personal property based on less than probable cause "[w]hen the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests." (*Place*, 462 U.S. at 703, 77 L. Ed. 2d at 118, 103 S. Ct. at 2642.) Specifically, the *Place* Court concluded that the constitutional limitations applicable to investigatory stops under *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880, which permit the detention of a person if an officer has reasonable suspicion of criminal activity based on specific, articulable facts, define the permissible scope of an investigative detention of personal property on less than probable cause. *Place*, 462 U.S. at 702, 77 L. Ed. 2d at 117, 103 S. Ct. at 2642.

Clearly, this lesser standard of "reasonable suspicion" would be appropriate in this case in light of the fact that no privacy interest, possessory interest or liberty interest was invaded by the seizure. (See *Place*, 462 U.S. at 708, 77 L. Ed. 2d at 121, 103 S. Ct. at 2645; *United States v. Van Leeuwen* (1970), 397 U.S. 249, 253, 25 L. Ed. 2d 282, 286, 90 S. Ct. 1029, 1032.) However, we do not believe that the facts known to Detective Farrant were sufficient to justify a seizure

even under this lesser standard. Farrant testified that he seized the package based upon the following information: (a) the package was not delivered by truck or courier, (b) it was paid for in cash, (c) it had a handwritten airbill, and (d) it was going from one individual to another. He admitted that other than these characteristics of the envelope there was nothing unusual about it. We do not believe that these facts alone were sufficient to support a reasonable, articulable suspicion that the Federal Express envelope contained contraband.

■ We also believe it appropriate to condemn the trial judge's use of defendant's daughter's testimony in aggravation when he sentenced defendant. The record shows that defendant had a prior conviction in 1981 for possession of marijuana for which he was sentenced to one year of probation. At the sentencing hearing, the trial judge stated that he would not count the conviction "of much significance" because it was in 1981 and, in the view of the sentencing judge, not a significant crime. The trial judge then stated that, according to his recollection, the cocaine found in defendant's possession was 94% to 96% pure and, therefore, carried a "potential for substantial harm for the public." (A review of the record shows, however, that the relative purity of the narcotics seized from the McPhee home was not in evidence. As a matter of fact, the chemist stated during examination that she did not test the level of purity.) Nonetheless the judge asserted that he would not consider the drug's purity level or its danger of harm to others in aggravation because the legislature considered the public danger when it imposed a minimum six-year prison sentence. The judge then stated:

> "The matter that I do find aggravating is the testimony of the Defendant's eleven year old daughter. The Defendant testified falsely even though that could be used as matters to consider when imposing sentence. The Defendant committed perjury and make no mistake, that's what I believe is the facts. That may be taken into consideration in imposing sentence. United States v. Grayson, G-R-A-Y-S-O-N, 438 U.S. 41. I don't and I won't in this case but in my view, having the eleven year old daughter of the Defendant testify involving her perjury, what I believe is blatant perjury, that's an aggravating factor. That is a serious aggravating factor.

> It's not in the statute but I believe I can take it into account as other matters and I think that this is of such a nature that I will take this into account. To impose upon that eleven year old daughter to the extent where she testifies and testifies falsely, in my view, is shameful and reprehensible.

> Are these proceedings to be taken so lightly—that the defendant can take them so lightly or that the Defendant doesn't take

it serious is perhaps excusable because of the stakes that confront him and he has a right to defend himself.

To have his daughter testify in my view can have serious consequences for her and I think that is a tragedy."

The judge then sentenced defendant to nine years' incarceration in the Illinois State Penitentiary.

The sentencing of a defendant is a matter of judicial discretion and, if within statutory limits, we will not disturb a defendant's sentence unless the trial judge abused his discretion. (*People v. Banks* (1993), 241 Ill. App. 3d 966, 981, 609 N.E.2d 864, 874.) However, it has been held that consideration of an improper factor in aggravation affects a defendant's liberty interest and constitutes an abuse of discretion which mandates the defendant's resentencing unless "the factor is an insignificant element of the defendant's sentence." (*People v. Joe* (1991), 207 Ill. App. 3d 1079, 1085, 566 N.E.2d 801, 807.) In this case, the fact that defendant's daughter testified was the major aggravating factor contributing to defendant's nine-year sentence.

There are several reasons why it was improper for the trial judge to consider as an aggravating factor the fact that he believed defendant's minor daughter testified falsely on defendant's behalf. First, when sentencing a defendant, it is improper to consider the conduct of another person in aggravation. (*Joe*, 207 Ill. App. 3d at 1087, 566 N.E.2d at 808; *People v. Varela* (1990), 194 Ill. App. 3d 357, 363, 551 N.E.2d 318, 322.) In both *Joe* and *Varela*, it was held improper to consider in aggravation that defendants allowed their brothers to get involved in their offenses. In both cases, there was no evidence that it was at the defendants' urging that their brothers participated in the crimes. Similarly, in this case, there was no evidence that defendant urged his daughter to perjure herself. Additionally, other than the fact that the judge did not believe her story, it has not been established that she committed perjury; a separate hearing would have to be held on this issue. In fact, her story was not identical to defendant's testimony and supported the State's case in several respects.

Even assuming that this case is distinguishable from *Joe* and *Varela*, however, because defendant's daughter was a minor unlike the defendants' brothers in *Joe* and *Varela*, defendant still prevails. A defendant has a constitutional right to present witnesses in his defense at trial. (*Taylor v. Illinois* (1988), 484 U.S. 400, 408-09, 98 L. Ed. 2d 798, 810, 108 S. Ct. 646, 652-53; *People v. Manion* (1977), 67 Ill. 2d 564, 576, 367 N.E.2d 1313, 1319.) It is improper for a sentencing judge to impose a harsher sentence upon a defendant because the defendant exercised his constitutional rights. (*People v. McCumber*

(1985), 132 Ill. App. 3d 339, 345, 477 N.E.2d 525, 529.) Although the trial judge stated he was considering defendant's daughter's "perjured" testimony in aggravation because it reflects on defendant's moral character, we believe that to allow a judge to consider such a factor would have the effect of chilling a defendant's full exercise of his constitutional rights.

In this case, defendant's minor daughter witnessed his arrest. He had a constitutional right to present her testimony. It would be an impermissible encroachment upon this right if a judge were allowed to consider as an aggravating factor the fact that he presented a minor's testimony in support of his unsuccessful defense. Otherwise, any time a defendant offers a minor's testimony in support of his defense and he is convicted, he will be subject to a harsher sentence for doing so. Thus, in effect, he will be impermissibly penalized for exercising his constitutional rights.

In light of our disposition of this case, we need not address defendant's final contention that certain comments by the prosecutor during closing argument deprived him of a fair trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

MANNING, P.J., and O'CONNOR, J., concur.