FIFTH DIVISION

January 14, 2005

No. 1-03-2234

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )   )

RONALD TILLMAN, ) Honorable

) James B. Linn, 

 Defendant-Appellee. ) Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant Ronald Tillman, and codefendants Jason Stampley, Vennitt Carlvin, and Manning Goldman, were charged with various drug offenses.
(footnote: 1)  Specifically, defendant was charged with possession of a controlled substance with intent to deliver. Defendant filed a motion to quash his arrest and suppress evidence arguing that the police illegally entered his home and that the evidence they recovered was the fruit of the illegal arrest.  The trial court granted defendant's motion and denied the State's motion to reconsider.  On appeal, the State contends that the trial court erred in suppressing the evidence recovered from defendant.  We reverse and remand for further proceedings.

At the suppression hearing, codefendant Manning Goldman testified that on October 6, 2002, between 6 and 6:30 p.m., he was at defendant's apartment in the Robert Taylor Homes housing project located at 4037 South Federal Street.  Defendant lived in apartment 1409.  Goldman stated that he went there to play games and smoke marijuana with defendant and codefendants Jason Stampley and Vennitt Carlvin.  Goldman had been in the apartment for about 10 or 15 minutes, when, after exiting the bathroom, he saw that the police were in the apartment.  The police searched him and found cannabis hidden in the crotch of his pants.

Defendant testified that at the time of the incident, he and his aunt lived at 4037 South Federal Street in apartment number 1409.  Defendant stated that he was smoking marijuana when he heard a knock at his door.  Defendant opened the door and the police, who were in street clothes and had their weapons drawn, entered the apartment, pushed defendant against the wall, and asked him who held the lease to the apartment.  Defendant told the police that he was the leaseholder.

Defendant retrieved his lease from his bedroom, which was in the back of the apartment, and the police began searching the entire apartment.  When defendant returned from his bedroom to the living room, the officers told him to sit on the couch, where he remained while they searched his apartment.  The police kicked a hole in the front living room wall and recovered narcotics from defendant's bedroom. Defendant did not give the police permission to enter his apartment, never signed a consent-to-search form, and never saw a search warrant.

Officer Edwin Uteras testified that on October 6, 2002, he was working with Officers Lee, Snelling, Seinitz, and Schoeff. Officer Lee had informed him that an anonymous citizen reported that "drug dealers run in apartment 1409" of 4037 South Federal Street.  Prior to October 6, 2003, Officer Uteras had made approximately 50 narcotics arrests at 4037 South Federal Street. At about 6:15 p.m., Officer Uteras arrived at the building with Officers Schoeff and Seinitz.  Upon his arrival, he saw that Officer Lee had detained Tywan Jordan, who was working "security," at the stairwell of the building.  Officer Lee told him that it was safe to proceed up the stairway.  As Officers Uteras, Schoeff, and Seinitz went up the stairway, Officer Uteras saw Goldman and Stampley look in his direction and heard them say "slickers," 
i.e.
, police.  Goldman threw down a clear plastic bag containing cannabis, and Stampley threw cocaine onto the ground of the third floor.  Goldman and Stampley fled up the stairs and the officers recovered the dropped items.

The officers then chased Goldman and Stampley up the stairs to the fourteenth
 floor.  Officer Uteras did not see Goldman or Stampley enter apartment 1409, but by the time he reached the apartment, Officers Seinitz and Lee had entered the apartment and the door was open.  Goldman was in the front living room on his knees and Stampley was next to him.

Officer Joe Seinitz, who had been assigned to the public housing tactical unit for six years at the time of this incident, corroborated Officer Uteras' testimony.  Officer Seinitz also testified that Officers Uteras and Schoeff recovered the items dropped by Stampley and Goldman and then followed him as he chased Stampley and Goldman up the stairway.  Officer Seinitz saw Stampley and Goldman run into apartment 1409, and he followed them inside because he was pursuing two offenders he believed committed a felony.

Upon entering the apartment, Stampley and Goldman stopped in the living room and were detained by other officers.  Officer Seinitz saw defendant, who quickly walked from the living room to the back bedroom, and he followed him.  Officer Seinitz followed defendant into his room because defendant had something in his hand and because of his movements.  He also followed defendant into his bedroom because, based on his experience as a public housing officer, he was concerned for his safety and believed a felony was in progress.

After entering the bedroom, Officer Seinitz observed defendant place the item that was in his hand into a hole in the wall.  Officer Seinitz then placed defendant in custody and kicked the wall about a foot below the hole.  He recovered a bag containing 625 packets of suspected cocaine and a 9-millimeter handgun.

After hearing the evidence, the trial court took the motion under advisement.  The court stated that the officers were in hot pursuit of Stampley and Goldman, and therefore had a right to be in defendant's apartment.  However, regarding defendant, the court stated:

"Mr. Tillman is in a little bit of a different posture.  He actually lives there.  He's got absolute standing there.

* * *

[With] Mr. Tillman *** I think we have to start looking at it through fresh eyes and see does something happen while the police are in the apartment lawfully that would give them probable cause to start making seizures.

* * *

*** [W]hat I heard about Mr. Tillman is ambiguous, somewhat ambiguous, because the officer is being candid.  He says, I don't know what he had in his hand.  I don't know what he's doing exactly.  ***  I consider this to be on the close side."

The State filed a written response to defendant's motion to quash arrest and suppress evidence, arguing, in part, that: the officers' warrantless entry into defendant's apartment was lawful based on probable cause and exigent circumstances, the hot pursuit of a fleeing felon; and, while inside the apartment searching for the fleeing felons, the police saw defendant in plain view in possession of what they thought was narcotics. After conducting another hearing on the motion, the court again took the matter under advisement.

The court then granted defendant's motion to quash arrest and suppress evidence, stating, in part:

"[T]here were police on patrol in a housing project.  They had some information that there may be some suspicious activity that would warrant a police investigation about goings on in a particular unit.

While they were in the hallways and common areas, they encountered two of the co-defendants.  *** Their encounters with these two people, Mr. Stampley and Mr. Goldman, caused them to want to talk with them.  During these matters, both those men discarded contraband and bolted for the very apartment that the police were there to check out.

They ran into the apartment.  The police were in hot pursuit.  I do not have a problem with the police fulfilling this hot pursuit of fleeing felons, and they got into somebody else's unit lawfully.  When they got inside the unit, it turns out that, *** this is where Mr. Tillman lived.  He is the leaseholder of this place.

All this tumult is going on.  People are running in. Plainclothes police officers are chasing people into a unit.  Mr. Tillman goes to the back of the unit and throws something into a hole in the wall.

In light of everything going on there, the police did not know what he may have had, but this was his home.  It was his unit.  He put something in a hole in the wall, and what I find particularly relevant is that the police acknowledged that they did not see what he had in his hand and what they [
sic
] put in the hole in the wall.  They did not see it.  They did not know what it was.

They went to the hole in the wall. They could not see what was there.  The police at that point started kicking into the hole in the wall and literally kicked through the dry wall, and at that time they discovered the contraband which is the subject of this motion.

* * *

In this case, the police do not know what it was that Mr. Tillman put in that hole.  And there may have been lots of things other than contraband or matters of danger that he put in the hole.  ***  It could have been anything.  It is kind of neutral conduct."

The State filed a motion for the court to reconsider its ruling, which the trial court denied.  The State then filed this appeal.

In reviewing a ruling on motion to suppress, we accord great deference to a trial court's historical factual findings unless such findings are against the manifest weight of the evidence; however, we review 
de novo 
the ultimate legal question of whether the evidence should be suppressed.  
Ornelas v. United States
, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996); 
People v. Pitman
, 211 Ill. 2d 502, 512-13 (2004). 

Initially, we agree with the trial court's assessment that exigent circumstances were present -- the officers were in hot pursuit of Stampley and Goldman, and therefore, their entry into defendant's home without a warrant was proper.  The police may make a warrantless entry into someone's home if exigent circumstances exist.  
People v. McNeal
, 175 Ill. 2d 335, 345 (1997).  In determining whether a circumstance is exigent, we evaluate the totality of the circumstances and whether the officer acted reasonably at the time he entered the premises.  
People v. Yates
, 98 Ill. 2d 502, 515 (1983).  The "hot pursuit" of a suspect who flees from a public place into his residence constitutes an exigent circumstance.  
United States v. Santana
, 427 U.S. 38, 43, 49 L. Ed. 2d 300, 305, 96 S. Ct. 2406, 2410 (1976).

Here, Officer Lee received information that "drug dealers [ran]" in defendant's apartment.  Officer Lee called his team for assistance and detained the man working "security" at the base of the stairwell of defendant's building.  After responding to Officer Lee's call and talking to him at the scene, Officers Uteras, Seinitz, and Schoeff began to climb up the stairwell and saw Goldman and Stampley.  Goldman and Stampley had items in their hands, which they dropped to the ground, yelled "slickers," and then ran up the stairs to defendant's apartment.  Officers Uteras and Schoeff recovered the items, a bag of cocaine and a bag of marijuana, dropped by Goldman and Stampley, and Officer Seinitz pursued Stampley and Goldman up the stairs because he believed they were committing a felony.  Based on the totality of the circumstances, including the officers' experience, the officers properly entered defendant's apartment, as they were in hot pursuit of Stampley and Goldman.

Next, we determine that Officer Seinitz had probable cause to arrest defendant.  The police are entitled to make a warrantless arrest when they possess facts, at the time of the arrest, which would lead a reasonable person to believe that a crime has occurred and that the person to be arrested committed the crime.  
People v. Buss
, 187 Ill. 2d 144, 204 (1999).  The probability of criminal activity and commonsense considerations, not proof beyond a reasonable doubt, determine whether probable cause exists.  
People v. Montgomery
, 112 Ill. 2d 517, 525 (1986). Determinations of probable cause must be based on the totality of circumstances known to the officer at the time of arrest (
People v. Rucker
, 346 Ill. App. 3d 873, 886 (2003)
 
(modified upon denial of rehearing, February 2, 2004)) and must be considered from the arresting officer's standpoint, with his skill and knowledge, not from an average citizen's standpoint.  
People v. Stout
, 106 Ill. 2d 77, 86 (1985).

Here, Officer Seinitz chased Stampley and Goldman into defendant's apartment, and upon entering the apartment, saw defendant in the living room holding something in his hand. Defendant quickly walked back to his bedroom.  Officer Seinitz followed defendant because he was concerned for his safety and believed a felony was in progress.  Officer Seinitz then observed defendant put the object he was holding into a hole in the wall. The trial court characterized this as "neutral conduct."  We disagree with this characterization given the totality of the circumstances.  The officers were aware of an anonymous tip concerning drug activity in apartment 1409 -- defendant's apartment. When they arrived, the officers found a man working "security" on the first floor, and then encountered codefendants Stampley and Goldman.  When codefendants saw the officers, they yelled "slickers," a term for undercover police officers, then dropped bags of drugs and fled.  Codefendants ran into apartment 1409, followed by the officers.  Defendant was in the apartment holding something in his hand.  When defendant saw the officers, he quickly walked away from them into a bedroom, where he put the item he was holding into a hole in the wall.  Under these circumstances, the officers could reasonably conclude that defendant was attempting to hide contraband.  This reasonable belief provided probable cause for defendant's arrest.  See 
People v. Love
, 199 Ill. 2d 269 (2002) (in determining whether probable cause for arrest exists, an officer is not required to visually identify an item as a narcotic for the arrest to be valid).

Finally, we decide that Officer Seinitz properly recovered the narcotics from the wall.  A search incident to a valid arrest is proper if the search is conducted either contemporaneously or immediately prior to the arrest.  
Rucker
,  346 Ill. App. 3d at 886.  Searching a person or a place under a suspect's control, without a warrant, is lawful when the search is made subsequent to a lawful arrest and is conducted with the goal of locating other items connected to the crime.  
People v. Marquis
, 24 Ill. App. 3d 653, 659-60 (1974).

Here, Officer Seinitz's seizure of the cocaine was made pursuant to a valid arrest, as stated above.  Further, as Officer Seinitz observed defendant place the object he was holding into a hole in the wall, an area immediately within defendant's control, Officer Seinitz acted reasonably in searching the area and recovering the narcotics.  Therefore, the trial court erred in granting defendant's motion to suppress the cocaine recovered by Officer Seinitz.

Based on our conclusion that Officer Seinitz had probable cause to arrest defendant and to search the hole in the wall, it is unnecessary for us to address the State's alternative assertions that the contraband was discovered during a proper protective sweep and that it inevitably would have been discovered.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

O'BRIEN, J., concurs. 

NEVILLE, J., dissents.

JUSTICE NEVILLE, dissenting:

I respectfully dissent in this case because I believe the majority (1) failed to give due deference to the trial court's findings; and (2) used the hot pursuit and exigent circumstances doctrines to justify and legitimize the illegal arrest of the defendant and the search of his apartment.

The case before this court involves extensive trial court findings. In order to understand the trial court's decision granting Tillman's motion to suppress, I think we should examine all the trial court's findings.  While holding the hearing on Tillman's motion to suppress, the trial court made the following findings during the first hearing:

                       "I will make a finding right now. I believe that the police officers when they tell me that they were in hot pursuit of what they believe to be felony activity, I believe that they had a right to be in the apartment because they were in hot pursuit of Mr. Goldman and Mr. Stampley. I don't have a problem with that getting into the apartment.

Mr. Tillman is in a little bit of a different posture. He actually lives there. He's got absolute standing there.

Now, when the police - - they got there rightfully. And I don't have any concern with what they're doing in the apartment, and they certainly have a right to make seizures as to Mr. Stampley and Mr. Goldman.

Mr. Tillman, though, and other people in the apartment, I think we have to start looking at it through fresh eyes and see does something happen while the police are in the apartment lawfully that would give them probable cause to start making seizures.

Now, tell me about Mr. Tillman's conduct and how that amounts to probable cause? ***  I'll concede that the police have a right to be there. Now, tell me why they have a right to make seizure of Mr. Tillman.

What did they see Mr. Tillman do before they broke the law further to see what it really was?

Well, if there was evidence that I found credible that he was committing a crime in plain view, we wouldn't be having this conversation. But what I heard about Mr. Tillman is ambiguous, somewhat ambiguous, because the officer is being candid. He says, I don't know what he had in his hand. I don't know what he's doing exactly."

After continuing the hearing, the trial court made additional findings when granting Tillman's motion to suppress:

                       "In this case, the police do not know what it was that Mr. Tillman put in that hole. And there may have been lots of things other than contraband or matters of danger that he put in the hole. Maybe he was getting rid of some of his own money. Who knows what it was? It could have been anything. It is kind of actually neutral conduct.

Looking at this in its totality the Court must answer this question. Would a warrant - - Would a search warrant be issued for Mr. Tillman with these facts at hand, and I am not so sure that it would.

I have considered this carefully. I do not believe that the police have a right to start destroying somebody's home, breaking through dry wall even though other people that didn't live there had run into the home.

They had a right to make his seizures of those people, but I think the breaking of the walls without knowing exactly what it was they were looking for in this Court's mind does go to the other side of the Fourth Amendment for that which is allowed. The motion is allowed."
 

This case involves an issue of first impression; therefore, it requires an examination of Illinois case law. The first question presented in this case is, Did the majority use the appropriate standard of review? I think the answer to this question is no.  In 
People v. Sorenson
, 196 Ill. 2d 425  (2001),  the supreme court pointed out that findings of historical fact should be reviewed only for clear error and that reviewing courts must give due weight to inferences drawn from those facts by the fact finder. 
Sorenson
, 196 Ill. 2d at 431, citing 
Ornelas v. United States
, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). I believe the majority violated the 
Sorenson
 rule because the majority failed to give due weight to the inferences drawn from the historical facts by the fact finder. I do not believe, given the totality of the circumstances, that the following findings of the trial court were clearly erroneous: (1) that "[W]hat I heard about Tillman is ambiguous" because the officer said he did not know what Tillman had in his hand and the officer did not know what Tillman was doing; (2) that "the police did not know what it was that Tillman put in that hole"; (3) "that there may have been lots of things other than contraband"; and (4) that "It is kind of neutral conduct." The majority "disagreed" with the trial court's characterization of Tillman's activities in the apartment being "neutral conduct" given the totality of the circumstances. The majority must do more than disagree with the trial court's characterization of the evidence. According to 
Sorenson,
 the majority must find that the trial court's findings were clearly erroneous.  
Sorenson
, 196 Ill. 2d at 431, citing 
Ornelas v. United States
, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). By failing to make a clearly erroneous finding before commenting on and then reversing the trial court's findings,  the majority has violated the standard of review rules followed by Illinois courts.
 
Sorenson
, 196 Ill. 2d at 431, citing 
Ornelas
, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663. 

I believe the trial court's findings were correct based on the totality of the circumstances. "[A]t the very core [of the fourth amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." 
Payton v. New York
, 445 U.S. 573, 589-90, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382 (1980). Tillman was not afforded this right by the police. Officer  Seinitz testified that when he entered the apartment he saw Mr. Tillman, but he was not sure what he had in his hands and that he followed Tillman to the rear of his apartment "because of his movements." I believe that Tillman's conduct was neutral conduct because Tillman was the leaseholder of the apartment; therefore, he had a fourth amendment right to be in and to move around his apartment without interference from the police. A concomitant of Tillman's fourth amendment right to be in the apartment was his right to privacy. In light of Tillman's fourth amendment rights, when the police did not have an arrest warrant or a search warrant or consent to search the apartment, Tillman's walking or even running around the apartment would not justify a police officer following him around the apartment or searching the apartment for contraband.

The majority found that the police had probable cause to arrest Tillman because the officers had a reasonable belief that Tillman was attempting to hide contraband. I submit that if the police did not know what Tillman had in his hand while standing in his living room, their lack of knowledge could not be characterized as a reasonable belief that he was attempting to hide contraband.  Instead, the police had what is commonly known as "a suspicion."  Suspicion does not provide probable cause and was not a justification for the police to arrest Tillman or search his residence. 
Henry v. United States
, 361 U.S. 98, 101, 4 L. Ed. 2d 134, 138, 80 S. Ct. 168, 170 (1959) (rumors, reports, suspicion or strong reason to suspect are not adequate probable cause to support a warrant for arrest).

The majority also argues that the exigent circumstances created by Tillman's codefendants dropping contraband on the steps and attempting to elude the police by running up 11 flights of steps into Tillman's apartment provided probable cause to arrest Tillman inside his apartment when he was never seen outside the apartment by the police. In 
People v. Johnson
, 94 Ill. 2d 148, 159 (1983), the supreme court held that the attempted flight by one defendant for a separate crime cannot be used to elevate the suspicion of the police to the level of probable cause for another person's arrest.  
Johnson
, 94 Ill. 2d at 159.   
Johnson
  makes it clear that exigent circumstances may be created when felons are fleeing from the police, but the crimes or exigent circumstances that provided probable cause to enter Tillman's apartment and arrest the fleeing felons cannot be imputed to Tillman to provide probable cause for the police to arrest Tillman or search his apartment.  
Johnson
, 94 Ill. 2d at 159. Finally, since the police did not observe Tillman committing a crime, Tillman's arrest cannot be justified by the contraband discovered after the warrantless, nonconsensual entry into his apartment. 
Henry
, 361 U.S.  at 103, 4 L. Ed. 2d at 139, 80 S. Ct. at 171.

The majority also argues that it was permissible for the officers to search Tillman's residence because they feared for their safety. I disagree for two reasons. First, it is axiomatic that neither the United States Constitution nor the Illinois Constitution permits the police to use their safety as a justification for their unlimited search of Tillman's apartment. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6.  Second, in 
People v. McPhee
, 256 Ill. App. 3d 102 (1993), this court held that the scope of a search pursuant to a valid warrant cannot extend beyond the place to be searched and the person or things to be seized that are set out in the warrant. 
McPhee
, 256 Ill. App. 3d at 109-10. 
McPhee
 makes it clear that even when the police have a valid warrant, the scope of their search is limited. Therefore, following the reasoning of 
Johnson
 and 
McPhee
, when the police enter a residence pursuant to exigent circumstances, they can only arrest the people (suspected felons) who created the exigent circumstances ( 
Johnson
, 94 Ill. 2d at 159), and the search cannot extend beyond the area the people creating the exigent circumstance are found in. 
McPhee
, 256 Ill. App. 3d at 110. The codefendants who created the exigent circumstances in this case were apprehended in the living room in Tillman's apartment; therefore, the police search should not have extended beyond Tillman's living room.  
McPhee
, 256 Ill. App. 3d at 110. 

In conclusion, although Tillman was suspected of a drug offense, he is no less entitled to fourth amendment protections. The fact that the police were in hot pursuit of other felons whose alleged criminal activities created exigent circumstances  did not provide probable cause for the police to arrest Tillman or search his apartment. When the police make a warrantless, nonconsenual entry into a person's home, 
Johnson
 and 
McPhee
 make it clear that the police are limited in terms of the areas that they can search and the people they can seize. 
Johnson
, 94 Ill. 2d at 159;  
McPhee
, 256 Ill. App. 3d at 110. Therefore, I must dissent from the majority's decision because the majority did not give due deference to the trial court's findings, and 
Henry
, 
Johnson
 and 
McPhee
 make it clear that the police did not have probable cause to arrest Tillman  or search his apartment.  
Henry
, 361 U.S. at 101, 4 L. Ed. 2d at 138, 80 S. Ct. at 170; 
Johnson
, 94 Ill. 2d at 159;  
McPhee
, 256 Ill. App. 3d at 110. 

For the foregoing reasons, I would affirm the decision of the trial court.

FOOTNOTES
1: The trial court dismissed the charges against Carlvin, found Goldman guilty of possession of marijuana, and found Stampley guilty of possession of a controlled substance.