THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PHILLIP G. RODGERS, Defendant-Appellant.

Third District    No. 80-273

Opinion filed April 8, 1981.—Rehearing denied June 22, 1981.

Michael W. Sonnemaker, of Peoria, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

Phillip G. Rodgers was found guilty after a bench trial of two counts of unlawful possession of a controlled substance and one count of unlawful possession of cannabis. Rodgers was placed on probation for 2½ years and fined $500.

Trial testimony established that on December 4, 1979, Debra Rodgers was beaten during a home invasion in East Peoria, Illinois. Her husband, Phillip G. Rodgers, arrived home shortly after the assault and viewed the assailant's escape vehicle. He spoke with his wife and then contacted the East Peoria police department. Mrs. Rodgers testified that she described the assault to the police officers. She said the struggle was limited to the living room of their home and nothing was taken from the home by the assailant. Mr. and Mrs. Rodgers both testified they did not consent to a police search of any part of their home.

Shortly after the first police officers arrived on the scene Mrs.

Rodgers was taken to a Peoria hospital by ambulance. Her husband was then asked to leave the house by Officer Duke and was transported to the East Peoria police department to give a statement relative to the beating. At this point in time everyone except police officers was excluded from the dwelling.

The beating of Mrs. Rodgers occurred in the living room. Naturally, it was in disorder. The Rodgers specifically told the police the assailant did not enter any other room in the house. Nonetheless, after the Rodgers' departure, the police conducted an exhaustive, inch-by-inch, search of the house. This search of the remaining six-room house revealed nothing disturbed. No drawers or doors were open in the bedroom; it had not been ransacked. Diamond rings, watches, and jars of coins were left intact. During this search, Robert Dubois, a crime scene technician for the Illinois Department of Law Enforcement, opened closed doors of the nightstand in the bedroom. He did this believing a safe was inside. No safe was found. He did discover, open, and remove a shoe box which contained controlled substances.

The officers possessed no search warrant of any type.

Rodgers contends that the trial court erred in denying his motion to suppress the evidence found in the shoe box in the nightstand as being the product of an illegal and unreasonable search and seizure.

The State urges that a search of the entire house, including the nightstand in the bedroom, was reasonable. Since Rodgers telephoned the police to come to the scene of the crime, the State argues, he impliedly consented to the police search of the entire house, including the nightstand.

This appeal presents two questions. May a police officer search the home where a beating occurred without a search warrant and without express consent of the conscious victim-homeowner? If a search is permissible, what are its perimeters?

Initially, we find no exigent circumstances present to justify a search of the entire home. The officers were not looking for the assailant. The victim and her husband both made statements that the assailant fled the scene. The criminal activity was confined to the living room; thus, there was no reasonable basis to expand the search to any other room.

■■ As Mr. and Mrs. Rodgers never expressly consented to the search, we now analyze the theory of implied consent. The principles of consent searches are well established. They are applicable where the consent is implied from actions as well as where expressly granted. In order for a warrantless search to be lawful, the consent to search must be given by one with proper authority to consent. (*United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988.) The consent to search must be freely and voluntarily given. (*People v. Blitz* (1976), 38 Ill. App. 3d

419.) The consent may be limited to a specific place or item. *People v. Sanders* (1976), 44 Ill. App. 3d 510.

Rodgers' act of calling the East Peoria police department to obtain help for his wife was unquestionably a voluntary invitation to the police to enter his home. However, we are not persuaded that this was an invitation to conduct a warrantless search of the magnitude embarked upon by the officers. The implied consent was limited for the specific purpose of investigation of the beating which occurred in the living room. Thus, any search was restricted to the immediate room of the beating for evidence relative to the beating. To expand the search beyond the living room was outside the scope of the consent implied by Rodgers' act of calling the police.

The police always had the opportunity to obtain express consent to search beyond the living room. They knew Rodgers was at the East Peoria police station giving a statement about his wife's beating. They, in fact, telephoned him there to inquire about medication prescribed for his wife. Furthermore, the crime scene had been secured and a warrant could have been sought. Its issuance seems unlikely, as we find the record void of any probable cause for which a search of the remainder of the house could have been legally justified.

At the suppression hearing Crime Scene Technician Dubois and Officer Duke testified that at the time they commenced their search they were unaware of the following: (1) criminal activity was confined to the living room; (2) the assailant had fled; (3) nothing was taken from the dwelling. We find it a bit incredible that crime scene professionals would embark upon their investigation without first obtaining information and statements about such matters from a conscious victim or her spouse.

■■ Even if this is so, the exhaustive search of the home was unreasonable. Dubois testified he walked through the entire home *before* conducting the more exhaustive exploration. Possessing no information about the crime he was investigating, Dubois may have been justified in the general survey of the home. However, upon discovering everything in order and nothing to link the disruption in the living room with any other location in the home, Dubois' tenuous authority to search terminated. His subsequent inch-by-inch search of the Rodgers' home was unreasonable, illegal and violative of the fourth amendment to the United States Constitution. Therefore, evidence seized from the closed nightstand in the bedroom was illegally seized and the trial court erred in denying Rodgers' motion to suppress that evidence.

For the reasons stated, the judgment of the trial court is reversed.

Reversed.

ALLOY and BARRY, JJ., concur.