# Illinois Official Reports

## Appellate Court

---

**People v. Santovi, 2014 IL App (3d) 130075**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARIA L. SANTOVI, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-13-0075 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | April 7, 2014<br><br>May 27, 2014<br>May 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from multiple charges brought against defendant, including driving under the influence and leaving the scene of an accident, the trial court properly granted defendant's motion to rescind the statutory summary suspension of her driver's license on the ground that defendant was illegally arrested when an officer who discovered defendant in the bathroom at her residence threatened to knock the door down if defendant did not come out, since the driver of the vehicle defendant hit with her car followed defendant to her home and waited for the police to arrive, and although defendant's husband consented to the responding officers' warrantless initial entry into the residence, his consent was not unlimited, especially when defendant demonstrated her objection to any further police intrusion by locking herself in the bathroom, and under the circumstances, one officer's statement that she would knock the bathroom door down if defendant did not open it was a command that constituted an illegal arrest. |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 12-DT-855, 12-TR-56386-91; the Hon. Roger Rickmon, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | James Glasgow, State's Attorney, of Joliet (Richard T. Leonard (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | Terrence J. Wallace (argued), of Farano & Wallace, of Lockport, and Ted P. Hammel and David P. Smith, both of Brumund, Jacobs, Hammel, Davidson & Andreano, LLC, of Joliet, for appellee. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion. Presiding Justice Lytton and Justice O'Brien concurred in the judgment and opinion. |

## OPINION

¶ 1    The State charged defendant, Maria Santovi, with driving under the influence, improper lane usage, leaving the scene of an accident, failure to give information or render aid, illegal transportation of alcohol, operating an uninsured motor vehicle, and failure to reduce speed to avoid an accident.

¶ 2    Defendant filed a petition to rescind her statutory summary suspension. Following testimony in the civil proceeding, the trial court granted defendant's petition, finding that the officer effectuated an illegal arrest when the officer threatened to kick the bathroom door down.

¶ 3    In the criminal matter, a hearing was set on defendant's motion to quash her arrest and suppress evidence. The parties stipulated that the trial court would rely on transcripts from the hearing on defendant's petition to rescind the statutory summary suspension.

¶ 4    The trial court held that while the officers' initial entry into defendant's home was consensual, the defendant was effectively under arrest at the time the officer threatened to kick down the bathroom door. The court ordered all evidence obtained after the illegal arrest suppressed.

¶ 5    The State appeals, arguing that the trial court erred as a matter of law when it held that defendant had been subjected to an illegal arrest.

¶ 6    We affirm.

BACKGROUND

¶ 8     On June 30, 2012, defendant was charged by traffic ticket with driving under the influence, improper lane usage, leaving the scene of an accident, failure to give information or render aid, illegal transportation of alcohol, operating an uninsured motor vehicle, and failure to reduce speed to avoid an accident. The State charged defendant with a second count of driving under the influence on August 3, 2012.

¶ 9     Defendant filed a petition to rescind her statutory summary suspension on August 3, 2012, alleging, in part, that she was subjected to an illegal, warrantless arrest inside her home. On October 9, 2012, the trial court held a hearing on defendant's civil petition.

¶ 10     Defendant's husband, Steve Santovi, testified that on the night of Friday June 29, 2012, he was at home and defendant had gone to the Taste of Joliet festival. He came home from work around 8 p.m. and had consumed three or four beers. When defendant arrived home around 11:30 p.m., Mr. Santovi was in the kitchen washing dishes. Defendant seemed fine. She did not stumble, stagger, or smell of alcohol. Defendant immediately went into the bathroom.

¶ 11     Shortly thereafter, the doorbell rang and two female officers were holding the storm door open. They asked Mr. Santovi, "Who just came home?" He responded that his wife had just arrived home. When officers asked to speak to defendant, he told the officers she was in the bathroom. Mr. Santovi called for defendant and walked toward the bathroom, which was seven to eight steps from the front door. The officers followed him into the home and stood next to him by the bathroom door. Mr. Santovi testified he did not give officers permission to enter. While waiting for defendant to emerge from the bathroom, one officer went into the garage, looked at the side of the car and said, "Yes, there is damage here." Mr. Santovi did not give officers permission to enter the garage.

¶ 12     Defendant was in the bathroom for quite some time. The officers knocked, and defendant responded that she would "be out in a minute." Officers then opened the door and stated, "Come on out here. Can we talk to you?" Mr. Santovi denied hearing defendant give the officers permission to open the bathroom door. Defendant eventually emerged. Defendant and officers went to the garage. Mr. Santovi testified that he watched defendant exit the bathroom and walk to the garage; he did not see her stumble or stagger. Defendant sat on a step in the garage while police talked to her.

¶ 13     Defendant called Officer Russell Pruchnicki, a patrol officer for the Plainfield police department. Pruchnicki received a dispatch call at 11:47 p.m. on June 29 regarding a hit-and-run collision at 135th Street and Route 30. Dispatch advised Pruchnicki that the victim of the hit-and-run was following the offending vehicle. He was dispatched to defendant's residence.

¶ 14     Upon arrival, Pruchnicki testified that two female officers, Tracy Caliendo and Erin Cook, and one male officer, Mike Friddle, were already present. Pruchnicki had a conversation with defendant while she was seated on the garage step. Defendant denied being in an accident. She then admitted that she was in an accident, but she just wanted to arrive home. Pruchnicki testified he smelled a strong odor of alcohol on defendant. She also appeared to be semi-coherent. Defendant admitted to having drunk four beers when asked if she had

consumed any alcohol. As for the vehicle, Pruchnicki did not notice any damage, but noted that the front end of the vehicle was in contact with a motorcycle, and the motorcycle was pushed against the back wall of the garage.

¶ 15    Pruchnicki asked defendant if she would go to the station to answer additional questions. He asked defendant if she understood she was not under arrest at that time. She responded in the affirmative. Defendant was not handcuffed. At the station, Pruchnicki administered field sobriety tests, which defendant failed.

¶ 16    Following Pruchnicki's testimony, defendant rested and the State made a motion for a directed verdict. The State argued that defendant failed to meet her burden of proof because the preceding testimony had established that she was driving under the influence of alcohol (DUI). Defendant argued that she was entitled to have her summary suspension rescinded because the officers made an illegal, warrantless entry into her home without exigent circumstances to justify the intrusion. The State argued that the officers were in hot pursuit and the evidence of the DUI would have dissipated by the time they obtained a warrant.

¶ 17    The trial court held no emergency exception or exigent circumstance existed that would allow the warrantless entry into defendant's home, and the arrest was, therefore, unlawful. The court denied the State's motion for a directed verdict.

¶ 18    The State called the hit-and-run victim, Shawn Howard. He testified that he was driving his car when he was hit by defendant's vehicle. When the defendant's vehicle took off, he followed her to her residence, where he waited for police to arrive.

¶ 19    Officer Tracy Caliendo testified that she was a patrol officer for the Plainfield police department. She was also a paramedic. Dispatch informed her of a hit-and-run and the specific address of defendant's residence. Upon arrival, Caliendo observed the defendant's garage door going down and a vehicle matching the description of the victim's vehicle parked out front.

¶ 20    Mr. Santovi answered the front door when Caliendo knocked. Caliendo stated that when she asked Mr. Santovi if defendant was alright, he stated that she had too much to drink and the officer could come inside and check. Caliendo entered the house and knocked on the bathroom door. She could hear defendant inside vomiting. Caliendo testified that her main concern was that defendant could have been injured in the crash due to the extreme amount of "vomiting and retching" coming from the bathroom. Caliedo stated she knocked on the door and asked defendant to open the door. Defendant responded, "Hold on."

¶ 21    Caliendo continued to knock on the bathroom door for approximately 45 seconds to a minute. At that point, she told defendant that she would knock the door down if defendant did not open it. Defendant then opened the door; Caliendo observed that defendant's eyes were bloodshot, red, and puffy.

¶ 22    Caliendo then asked defendant to come out into the garage so they could discuss the crash. Caliendo testified that at no time that evening did she tell defendant she was under arrest. Caliendo never physically touched defendant, never placed defendant in handcuffs, and never told defendant she was not free to leave. Caliendo also stated that defendant never asked to leave, nor did she indicate to Caliendo that she no longer wished to speak to her.

¶ 23     Following cross-examination of Caliendo, the State rested. The trial court stated that the issue "really is whether or not the entry into the house is lawful." The court found that entrance into the home was consensual, but continued the hearing for the parties to submit case law and for further argument.

¶ 24     The hearing reconvened on November 2, 2012. Defendant argued that she was under arrest when Officer Caliendo stated, "If you don't open up the door, I am going to kick it in." The State argued that defendant was not placed under arrest until defendant was told she was under arrest at the police department. In the alternative, the State argued that if defendant was actually under arrest at that point, it was a legal arrest. The State argued that the officers were in hot pursuit, an exigent circumstance negating the requirement for a warrant to enter the home. Second, the State argued that Officer Caliendo was acting out of concern for defendant's well-being, given the vomiting she overheard in the bathroom. Finally, the State contended that defendant's opening of the bathroom door was consensual, despite the officer's threats to knock the door down.

¶ 25     The trial court rejected the State's various arguments and granted defendant's petition to rescind the summary suspension, holding that the officer effectuated an illegal arrest at the time she threatened to kick the door down.

¶ 26     The court held a hearing on January 2, 2013, in defendant's criminal case on her motion to quash the arrest and suppress evidence. The parties stipulated that the trial court would rely on the transcripts from the hearing on defendant's petition to rescind summary suspension when ruling on the motion to quash arrest and suppress evidence.

¶ 27     The trial court held that the entrance into the house was consensual. The court found, however, that defendant was under arrest at the time the officer threatened to kick down the bathroom door. It stated, "Why this officer didn't wait until she came out and talk [*sic*] to her, I don't know. I don't know but I certainly don't believe it was a wellness check. She was effecting the arrest." The court granted defendant's motion to quash arrest and suppress evidence for all evidence obtained after the officer's threat.

¶ 28     The State appeals.

¶ 29                     ANALYSIS

¶ 30     The State's sole argument on appeal is that the trial court erred as a matter of law in finding that defendant was the subject of an illegal arrest. Specifically, the State contends that defendant consensually opened the door to the bathroom and, therefore, there was no arrest. In the alternative, the State argues that even if defendant was under arrest, it was proper because the police were in hot pursuit, *i.e.*, exigent circumstances existed such that warrantless entry into the defendant's home was valid and evidence therefrom not subject to suppression.

¶ 31               I. Consensual Entry and Arrest

¶ 32     Our analysis of the State's argument requires two separate inquires. The first is whether one occupant may give law enforcement effective consent to search a shared premises over a cotenant who is present and refuses to give such consent. Neither party effectively addresses

this issue, instead wrapping defendant's consent into a discussion regarding arrest. While not wrong to do so, we find it a distinct issue critical to resolving the case. Second, we address whether the officers, by their actions, effectively seized defendant for fourth amendment purposes.

### A. Consensual Entry

The trial court found, and the parties do not dispute on appeal, that defendant's husband consented to the officers' initial entry into the home. However, as cotenants with equal rights to consent (or object) to a search, the husband's authority to consent is not unlimited in the face of defendant's demonstrated objection.

The Supreme Court has held that when one person who has common authority over the premises consents to a search, his consent is valid against an absent, nonconsenting person who shares that authority. *United States v. Matlock*, 415 U.S. 164, 170 (1974). However, although a cotenant gives his consent, a search will be found unreasonable as to a defendant who was physically present at the scene and expressly stated his refusal to allow police to enter and search the premises. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006).

We find *People v. Parker*, 386 Ill. App. 3d 40 (2007), instructive. There, the trial court granted defendant's motion to suppress physical evidence. The First District reversed, finding the warrantless search of defendant's home after defendant's live-in girlfriend gave consent was reasonable and did not violate the fourth amendment. *Id.* at 45. Defendant was asleep with his 11-month-old daughter in the back bedroom of the apartment he shared with his girlfriend. He testified that when he awoke, three or four police officers were in his bedroom pointing their guns at him. *Id.* at 42. One officer held a piece of paper that he explained was a consent form that defendant's girlfriend had signed allowing them to search the home. Defendant stated he did not consent to the search and was denied the opportunity to object to the search when the police seized him and took him to the front room. *Id.*

On appeal, the State argued that officers secured a valid consent to search the premises. *Id.* at 43. Defendant maintained that the search was unreasonable because he was awoken and seized at gunpoint, then removed from the room and deprived of the opportunity to object to the search. *Id.*

The court relied heavily on the nuanced holding of *Randolph* in reversing the suppression of physical evidence. The *Randolph* court acknowledged that it was drawing a fine line regarding co-occupant consent to search cases when it held that " 'if a potential defendant with self-interest in objecting is in fact *at the door and objects*, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the *threshold colloquy*, loses out.' " (Emphases in original.) *Id.* at 45 (quoting *Randolph*, 547 U.S. at 121). Unlike in *Randolph*, the court stated, although defendant was present nearby, he was not present at the threshold colloquy where his girlfriend gave voluntary consent. *Id.* Defendant therefore "lost out" on his opportunity to object to the search. *Id.*

- 6 -

¶ 39 We find that the case at bar is factually distinguishable from *Parker* and more in line with the rationale of *Randolph*. While defendant was not present at the front door making her objection to the search clearly and directly known, as was the case in *Randolph*, we find that locking the bathroom door serves the same purpose. Defendant demonstrably objected to any further police intrusion into her bathroom and had the right to do so.

¶ 40 In fourth amendment jurisprudence, reasonableness is measured by examining the totality of the circumstances. See *Illinois v. Wardlow*, 528 U.S. 119 (2000). The outcome thus depends on the facts of the specific case. Here, where the circumstances are that defendant purposely excluded police from the bathroom of her home, and the record reveals that officers easily could have secured the premises and sought an arrest warrant, there is no justification to abandoning the warrant requirement.

¶ 41 Notwithstanding defendant's own objection to the search, we further find that the officers exceeded the scope of defendant's husband's consent to search. See *People v. Baltazar*, 295 Ill. App. 3d 146 (1998) (the search must not exceed the scope of consent). The scope of a person's consent must be measured objectively: what would the typical reasonable person have understood by the exchange between the police and the person giving consent? *Baltazar*, 295 Ill. App. 3d at 149-50. Generally, the scope of a search is defined by its expressed object. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Under the circumstances present here, the husband's apparent authority to allow officers into the residence to talk to defendant did not translate to unbounded authority to force her out of a locked room. See *People v. Rodgers*, 96 Ill. App. 3d 416 (1981) (defendant's invitation to police to enter his home did not imply consent to enter and search all areas when consent was limited to a specific purpose). It is clear on the record that the husband's consent was limited to allowing officers inside the home for the purpose of speaking with defendant, not to knock down or threaten to knock down interior doors.

¶ 42 B. Arrest

¶ 43 For fourth amendment purposes, a person has been seized when his freedom of movement has been restrained by means of physical force or a show of authority. *People v. Melock*, 149 Ill. 2d 423, 436-37 (1992) (citing *United States v. Mendenhall*, 446 U.S. 544, 553 (1980)). "The relevant inquiry in determining whether a suspect has been arrested is whether, under the circumstances, a reasonable person would conclude that he was not free to leave." *Melock*, 149 Ill. 2d at 437. In some situations, however, where the person's freedom of movement is restrained by some factor independent of police conduct, " 'the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.' " *People v. Luedemann*, 222 Ill. 2d 530, 550 (2006) (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)).

¶ 44 In determining whether a person has been seized, and to assist in determining whether a reasonable person believes he or she is not free to leave, courts look to the *Mendenhall* factors. See *People v. Leach*, 2011 IL App (4th) 100542. The *Mendenhall* factors are: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person of the citizen; and (4) the use of language or tone of voice

indicating that compliance with the officer's request might be compelled. *Luedemann*, 222 Ill. 2d at 553. These factors are not exhaustive, and a seizure can be found on the basis of other coercive police behavior similar to the *Mendenhall* factors. *Leach*, 2011 IL App (4th) 100542, ¶ 9. The other side of that coin, of course, is that in the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. *Mendenhall*, 446 U.S. at 555. Our review of a trial court's ruling on a motion to suppress is twofold. The trial judge's factual findings are entitled to deference and will be reversed only if manifestly erroneous, while the court's ultimate ruling on whether suppression is warranted is a legal question subject to *de novo* review. *People v. McDonough*, 239 Ill. 2d 260, 265-66 (2010).

¶ 45    The State's argument that defendant consensually opened the bathroom door and, therefore, was not under arrest is without merit. Clearly, the officer's statement to "Open the door or I'll knock it down" is language indicating compliance is compelled. Defendant had the option of either staying in the bathroom waiting for the door to be broken in on her, or to come out. This is not consensual, nor would a reasonable person in defendant's shoes believe she was free to deny the officer's demand or end the encounter with law enforcement. Officer Caliendo told defendant what would happen if she did not comply; Caliendo would kick in the bathroom door. The State contends that because Officer Caliendo was the only officer present, she did not display her weapon, and she never physically touched or told defendant she was under arrest, the *Mendenhall* factors indicating a seizure are not present here. It is hard to imagine that Caliendo's threat that she would knock down the door if defendant did not come out of the bathroom would require anything other than defendant's mandatory compliance. The State conceded in oral argument that if a reasonable person would not feel free to decline the officer's demand to open the door, then it would be a seizure. "Open the door or I'll knock it down" is a command, not a request.

¶ 46    The State argues defendant placed herself in a confined area, thus persuading defendant to open the bathroom door gave her more freedom of movement, not less. No. The State confuses freedom of movement with the freedom to leave or to end the encounter. Whether this encounter had occurred in defendant's kitchen, closet, or bathroom, the proper inquiry is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would " 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *Bostick*, 501 U.S. at 437 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)). Officer Caliendo's threat clearly communicated to defendant she was not at liberty to ignore the officer's request. The officer's conduct constituted an arrest for fourth amendment purposes.

¶ 47                                   II. Hot Pursuit

¶ 48    In the alternative, the State contends that even if Officer Caliendo effectuated an arrest of defendant, it was legal because the officers had probable cause to believe the defendant had just left the scene of the accident and they were in hot pursuit.

¶ 49    It is a basic principle of fourth amendment law that a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable unless police can show that it falls

within one of the carefully designed set of exceptions based on the presence of "exigent circumstances." *People v. Wimbley*, 314 Ill. App. 3d 18, 24 (2000) (citing *Payton v. New York*, 445 U.S. 573, 583 (1980)). "The 'hot pursuit' of a suspect who flees from a public place into his residence constitutes an exigent circumstance." *People v. Tillman*, 355 Ill. App. 3d 194, 198 (2005) (citing *United States v. Santana*, 427 U.S. 38, 43 (1976)). Under the hot pursuit doctrine, a suspect may not defeat an otherwise proper arrest which has been set in motion in a public place by escaping to a private place. *Santana*, 427 U.S. at 43.

¶ 50     The hot pursuit exception to the warrant requirement is inapplicable to the facts of this case. As defendant points out, this arrest was not initiated in public. See *People v. Davis*, 398 Ill. App. 3d 940 (2010) (finding that hot pursuit doctrine was inapplicable where officers tried to initiate a warrantless arrest despite the fact that defendant had never been in public). Defendant was not fleeing police or arrest; she was leaving the scene of an accident. The officers did not witness the hit-and-run, nor did they attempt to conduct a traffic stop. Under the State's application of the doctrine, almost any situation where police were simply responding to a call from dispatch would constitute hot pursuit and justify a warrantless arrest. The fourth amendment does not allow for such a broad application of the doctrine.

¶ 51     We accordingly find no error in the trial court's suppression order.

¶ 52                                  CONCLUSION

¶ 53     For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 54     Affirmed.